**MORRIS et al. v. JACKSON'S MODEL LAUNDRY, Inc.**

**No. 11590.**

Court of Civil Appeals of Texas. Dallas. March 9, 1935.

Rehearing Denied April 20, 1935.

Clint & Eades, D. B. Eades, and Allen Eades, all of Dallas, for appellants.

Cedric G. Hamlin, of Dallas, for appellee.

LOONEY, Justice.

Mattie Morris and husband, Richard Morris, sued Jackson's Model Laundry, Inc., for damages for personal injuries received by Mattie, an employee of appellee, alleged to have resulted from the negligence of appellee in furnishing a defective and unsafe machine with which to work. Appellee answered by a general denial and a special plea to the effect that after the alleged injury, the parties agreed upon a settlement, under which the said Mattie was to accept as full compensation for all damages sustained the sum of $4.50 per week from the date of the injury until she was able to resume work; that appellee was to furnish, at its own expense, medical treatment, including all necessary medicines, and that, when pronounced ready to resume work by the physician in charge, appellee would reinstate her at a salary of $9 per week, payable weekly; that, accordingly, the said Mattie accepted the services of the physician furnished by appellee, accepted the agreed weekly compensation of $4.50 each week up to about the second day of January, 1932, when she refused to allow the physician to render further services, and failed and refused to receive the weekly compensation of $4.50; that her husband, Richard, with full knowledge of the agreement, ratified and confirmed the same by permitting his wife to accept said treatment and the weekly compensation; that appellee performed said agreement in so far as appellants made performance possible, and stands ready, willing, and able to keep and perform the terms of said agreement. In this connection, it is pertinent to state that appellants denied the settlement, and in no way attempted to enforce or avail themselves of the benefits accruing to them thereunder. On trial, the jury acquitted appellee of the charge

of negligence, and found in its favor on the issues as to settlement. On these findings, the court rendered judgment that plaintiffs take nothing by their suit, from which they appealed.

The findings by the jury are sustained by evidence, are unassailed, and, in our opinion, authorized the judgment; in fact, we are of opinion that no judgment other than the one rendered could properly have been rendered on the findings.

Appellants contend, however, that the judgment presents fundamental error in that it does not conform to the verdict nor dispose of all the issues and rights of the parties.

█ It appears that, in addition to the findings just mentioned, the jury found that Mattie Morris was damaged, as a result of the injuries of which she complained, in the sum of $1,000. However, in view of the findings against liability, appellants were not entitled to recover anything, hence the finding as to the amount of damages sustained was properly disregarded by the court as immaterial. Vogel v. Allen, 118 Tex. 196, 13 S. W.(2d) 340, 341. We think the judgment conformed precisely to the verdict and disposed of all material issues.

█ Appellants contend, nevertheless, that the court erred in refusing to grant a new trial, because of alleged misconduct of the jury. The contention in regard to this matter is that the jury, or at least some of the jurors, believed from the discussion in the jury room that it was immaterial how special issue No. 1 (on negligence) was answered; that is, whether answered "yes" or "no," and but for such belief, at least one or more jurors would not have answered the issue in the negative, acquitting appellee of the charge of negligence.

Appellants relied upon the testimony of two of the jurors, a Mr. Crane and a Mr. Montgomery. Crane testified on direct examination that the foreman of the jury, and others, stated that it would make no difference whether they answered issue No. 1 "yes" or "no," that witness so believed and would not have answered the issue "no" if he had not thought that, in any event, plaintiff would get something under the answer to special issue No. 3, the issue in regard to the settlement that was also found by the jury in favor of appellee. After testifying on direct examination, this juror, being questioned chiefly by the court, stated that he knew before damages could be awarded negligence would have to be found, and that he would not intentionally have given an untrue answer. From the "Q. and A." report, the following appears:

"Q. Now then, you regarded that answer (to issue No. 1) 'no' as being the true answer to that question from the facts you heard on the witness stand? A. Yes, sir.

"Q. Now then, you would not have given an untrue answer to it under any circumstances, would you? A. No, sir.

"Q. Then, there is nothing that could have kept you from giving that answer, was there? A. No, sir.

"Q. Is that your answer now to that question, in the light of the testimony 'no'? A. Well, except we all wanted, unanimously wanted, to give—

"Q. I know, but that was no concern of the jury, you see the law settles these matters. In answering these questions, you could only answer them truthfully, or otherwise, and is that your answer? A. Yes, sir.

"Q. In the light of the testimony and the charge of the court? A. Yes, sir.

"Q. The true answer that you gave? A. Yes, sir."

Passing to issue No. 3, on settlement, the court asked:

"Q. Did you not make that answer solely on the testimony? A. Yes, sir.

"Q. Was that the true answer as you found it, and understood it to be under the testimony? A. Yes, sir.

"Q. And you could not have found otherwise and stated that fact about it? A. Yes, sir.

"Q. And that answer you tell me is correct and true answer? A. Yes, sir.

"Q. And you so regarded under the facts proven before you? A. Yes, sir.

"Q. And the only thing you have in mind, that regardless of the law and the merits of the case, you want the negro woman to get some money. A. That is exactly it.

"Q. That is what you said? A. Yes, sir.

"Q. But you would not have let that keep you from giving the answer to the question? A. No, sir.

"Q. That your judgment led you to believe that was absolutely true? A. No, sir."

Issue No. 1 and the answer thereto was then read, and the juror was asked:

"Q. In your judgment right now, was that answer that you gave then a true answer to that question? A. Yes, sir."

Issue No. 3, as to settlement, and the answer thereto were read, and the juror was asked:

"Q. Now, in your judgment, at this time was the answer that you gave to special issue No. 3, at the time that you answered the question and returned your verdict, the only true answer you could have made to the question? A. Yes, sir.

"Q. Is that the truth as developed from the witness stand? A. Yes, sir.

"Q. And you now believe that was the true answer in the light of the law as given in the charge of the court? A. Yes, sir."

Continuing the examination:

"Q. Did you answer the question according to the law as given to you in the charge of the court, and according to the testimony you heard and did you simply mean that, although you did that, you would like for the plaintiff in this case to have gotten $1,-000? A. That is my idea.

"Q. But did your desire to give her $1,000 cause you to vary your answer, under the law and the evidence, and in accordance with the facts proven here? A. No."

On redirect examination, the witness reiterated that there was some discussion in the jury room between the foreman and others as to the effect of their answer on issues Nos. 1 and 3. Then, the following:

"Q. And you stated that the conclusion arrived at from this discussion affected your answer to question No. 1? A. Yes, sir.

"Q. That is true? A. Yes, sir.

"Q. Did that affect any of the others, so far as they stated? A. I think so, yes sir."

The Court: "Q. While it affected your mind, would it cause you to make any different answer to what the facts required? A. No, sir.

"Q. It did not? A. No, sir.

"Q. In other words, the answer that you made you made because it was in accordance with the facts proven and the charge of the court? A. Yes, sir.

"Q. To each question? A. Yes, sir."

Mr. Montgomery testified that issue No. 1 (on negligence) was answered first, did not believe answers to Nos. 1 and 3 would have any effect on answer to No. 4, and to the amount of damages sustained, would not have answered issue No. 1 "no" if he had thought she would not recover, thought in answering No. 3 (issue on settlement) that he was giving her $1,000. Answering questions propounded by the court, said that question No. 1 (on negligence) was plain enough, that he understood the questions should be answered according to the evidence. As to whether he answered the question according to the evidence said: "Well, I must have taken in some other facts." Asked, "Was that a true answer (to issue No. 1) according to the law given you in charge and according to the evidence as you heard it as a juror * * * ? Tell the court whether or not it is true and correct? A. According to the evidence and the law, it was; according to my idea, it was.

"Q. * * * It is your judgment now, and it was then a true answer or you would not have made it, is that right? A. I would not have answered that 'no.' "

Questioned further as to the answer of the jury to issue No. 1, the juror answered:

"Q. Was that your judgment about it then, and is that your judgment now? A. No, sir. It was not.

"Q. You would not swear to answers you did not think was true, would you? A. I must have.

"Q. What you mean is that you made what you believed was the correct answers, but you still thought this negro woman was still going to get some money, is that correct? A. Yes, sir * * *.

"Q. Did you at that time regard that as a true and correct answer to that issue, and do you regard it now as a true and correct answer to that question? A. No, sir."

As to issue No. 3 (on accord) the juror testified that the question is plain and that the answer was correct. Questioned by counsel for appellee, the juror said that his answer to issue No. 1 was "no," that at first he held out for a "yes" answer, but after considerable discussion finally agreed to answer the question "no," on a compromise.

The Court: "Q. What do you mean by that? They argued the matter with you and finally you agreed to it? A. Yes, sir."

The witness testified that at first nine jurors wanted to answer issue No. 1 "no," and that three, including himself, wanted to answer the issue "yes," but after discussing the matter, all agreed to answer the issue "no."

The Court: "Q. Now, what you have in mind is that, regardless of your answers to these questions, you wanted this woman to get $1,000? A. That is the idea.

"Q. That is what you are intending to tell me? A. Yes, sir."

Mr. E. F. Skudder, another juror, testified that, after reading the court's charge, the

issues were answered in the order in which they were propounded. He was then questioned and answered as follows:

"Q. Don't you know that they discussed the last question and the third question and answered the third question before they did the first? A. No, they answered the first question first, the second question second, and the third question, and then finally the last.

"Q. You had discussed all of the questions, didn't you, before you did that? A. Surely.

"Q. And you come to a compromise agreement that she would get $1,000? A. No sir, we didn't."

The Court: "Q. You didn't have any such agreement as to it at any time? A. No, sir.

"Q. There never was any understanding or agreement that you would vote for that answer with the understanding this woman would get her $1,000? A. No, sir. This first question was answered a half day before the others were."

The testimony of the jurors Crane and Montgomery is contradictory, i. e., the testimony given by each at one time is in conflict with his testimony at another. Testimony of this nature is of little value as a guide to a correct conclusion. In Easton v. Dudley, 78 Tex. 236, 14 S. W. 583, 585, Judge Collard said: "The evidence is no guide to the truth. Had the contradictory statements been made by two witnesses, one contradicting the other, the rule that there exists evidence to support the finding of the court would apply, but these statements are made by the same witness, which makes his testimony at least of little value,—not enough to justify a reliable conclusion." However, we do not deem it necessary to harshly criticize the testimony of these jurors, as we think it reasonably appears that the verdict was reached in the usual way, and that the differences of jurors were composed as the result of consultation. We think the jury intended to, and did answer the several issues according to the evidence, but these two jurors were anxious to see that the negro woman receive $1,000, the amount of the damage sustained, and they may have thought the effect of their answers to the several issues would bring about such result. This, however, being a matter over which the jury had no control, their desire or belief in this respect could not control or influence the judgment to be rendered.

However, the testimony of the juror Skudder relieves the verdict of any suspicion that might otherwise exist, of having been reached as the result of an irregularity, misunderstanding, or misconduct of any nature, and brings the case within the rule announced by the Commission in Bradshaw v. Abrams (Tex. Com. App.) 24 S.W.(2d) 372, to the effect that, the action of a trial court in overruling a motion for a new trial, based on alleged misconduct of the jury, should not be disturbed, on appeal, where the evidence is conflicting as to whether the alleged misconduct actually occurred. Failing to find reversible error, the judgment below is affirmed.

Affirmed.