R. G. FORD, DOING BUSINESS AS R. G. FORD BUTANE EQUIPMENT COMPANY, V. J. B. CARPENTER.

No. A-1858. Decided January 5, 1949.
Rehearing overruled February 2, 1949.
(216 S. W., 2d Series, 558.)

*Sam Hall* and *Ernest F. Smith,* both of Marshall, and *Curtis White,* of Dallas, for petitioner.

It was not error for the trial court to refuse to grant a new trial because one of the attorneys for defendant asked plaintiff whether he carried a policy of insurance, the question never being answered, and no request having been made by counsel for plaintiff that the jury be instructed to disregard the question, and said counsel having declined the trial court's offer to declare a mistrial, and the Court of Civil Appeals erred in fail-

ing to so hold. Airline Motor Coaches v. Howell, 195 S. W. (2d) 713; Rojas v. Vuocolo, 142 Texas 152, 177 S. W. (2d) 962; Yellow Cab Co. of Galveston v. Word, 125 S. W. (2d) 1050.

*Jones, Jones & Brian,* of Marshall, for respondent.

The Court of Civil Appeals correctly held that it was error to deliberately inject the known fact of accident insurance into this damage suit. Green v. Texas & Pac. Ry. Co. 81 S. W. (2d) 669; Barrington v. Duncan, 140 Texas 510, 169 S. W. (2d) 462; Myers v. Thomas, 143 Texas 502, 186 S. W. (2d) 811.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This is a suit by the respondent, J. B. Carpenter, plaintiff in the trial court, against his employer, R. G. Ford, the petitioner, and defendant in the trial court, who did business under the name of R. G. Ford Butane Equipment Company. The plaintiff sought damages for the loss of an eye which he alleged was caused by defendant's negligence in installing a defective bushing and nipple in one of the openings of a butane tank plaintiff was inspecting in his regular duties as inspector for defendant's butane and propane gas tanks. The tanks contained several outlets which were closed with temporary plugs after which water pressure of about 200 pounds to the equare inch was applied through one of the openings. The inspection consisted of tapping around each plug opening while the tank was under high pressure. The tank plaintiff was inspecting when he was injured had a temporary cast iron bushing and nipple at one opening instead of the regulation brass or steel plug. While he was tapping around this opening parts of the bushing and nipple blew out striking him in the eye and face, causing the injury.

During the cross examination of plaintiff by defendant's counsel he was asked this question: "You carry an accident insurance policy?" Counsel for plaintiff immediately objected and requested that the jury be withdrawn. The trial court retired the jury and asked plaintiff's counsel if he wanted the jury discharged, to which counsel replied, "I don't think plaintiff has to ask for a mistrial; not asking for it. I think a man familiar with that takes the consequences of it." Thereupon, the court sustained the objection, the jury was returned, and the trial proceeded. Upon a verdict convicting both parties of negeligence proximately causing the injury, judgment was rendered for the defendant.

It appears that several months before the trial the defendant had taken the plaintiff's oral deposition, at which time defendant's counsel developed the fact that the plaintiff carried an accident policy and had received payments under it for the injury sustained by reason of the explosion. It also appears that the jury mentioned accident insurance during their deliberations. However, the reference was casually made and promptly rebuked by the foreman and other members of the jury, and occurred only after the jury had agreed upon all the issues except the one as to damages, which was never answered.

The plaintiff sought a new trial by reason of the injection of accident insurance into the case by counsel for the defendant, and also because the jury mentioned the accident insurance during their deliberations. The trial court refused a new trial, but the Court of Civil Appeals sustained the error assigned by the plaintiff relative to the injection .of accident insurance by defendant's counsel, and reversed the judgment and remanded the cause. 212 S. W. (2d) 984.

The question propounded by defendant's counsel was as much a statement of fact as it was an inquiry, and was calculated to prejudice the rights of the plaintiff. It is ordinarily error for the plaintiff to mention the fact before the jury that the defendant has insurance to protect the liability for which he is sued, or that plaintiff has no protecting insurance. For a like reason it is also error for the defendant to refer to the fact that the plaintiff is protected by some form of insurance. In either case the reference is improper and is calculated to work injury. Myers v. Thomas, 143 Texas 502, 186 S. W. (2d) 811; Rojas v. Vuocolo, 142 Texas 152, 177 S. W. (2d) 962.

Consequently, there can be no question that it was error for defendant's counsel to refer to the insurance. But the defendant contends that the plaintiff waived the error by refusing to request that the jury be discharged and a mistrial declared.

■ It is ordinarily the rule that a defendant waives this point if he fails to request a mistrial when the error is committed in the presence of the jury by plaintiff's counsel. Harrison-Wright Co. v. Budd, 67 S. W. (2d) 670; Russell v. Adams, 18 S. W. (2d) 189; Moore v. Norman, 137 S. W. (2d) 833. It is insisted, however, that the same rule should not be applied to a plaintiff for the reason that continuing the case would work injury to the plaintiff while such action would inure to the benefit of the defendant. In support of that contention the plaintiff cites the same

case relied upon by the Court of Civil Appeals, Chapman v. Evans, 186 S. W. (2d) 827, 831 (writ refused, want of merit), wherein it is said:

"* * * Ordinarily when a plaintiff leads a jury to believe the one being sued is protected by insurance a court may summarily declare a mistrial; this, in many instances, would be beneficial to a defendant, but it does not follow that when a defendant intentionally or inadvertently apprises that jury of such things that a plaintiff must move for a mistrial and thereby benefit the defendant."

That case is not controlling because there was another assignment of error sustained by the Court of Civil Appeals in its reversal of the judgment of the trial court sufficient to justify our action in refusing the application for writ of error for want of merit.

At any rate, we do not agree with the holding in the Evans case, nor that of this case, which applies a different rule to the plaintiff from that applied to the defendant. Continuing a case does not always work injury to the plaintiff nor inure to the benefit of the defendant. The converse may be true in many instances. Of course, the plaintiff cannot collect damages from the defendant against the defendant's will without first getting a trial and a judgment. But it is not always the plaintiff who desires a speedy trial or the defendant who is seeking delay. We cannot assume that the plaintiff's case is always meritorious or that the defendant is merely seeking to defeat or delay the payment of his just debt. As a court we must view all parties impartially and assume that they will proceed in good faith, and that the legal rights of each will be furthered, and in this sense benefited, by a fair and speedy trial. Moreover, it freequently happens that a defendant files a cross action for damages in which, for all intents and purposes, he becomes a plaintiff, while at the same time he retains his status as an original defendant. In such a situation, if a different rule should apply to the plaintiff, it would be difficult, if not impossible, to determine which of the parties should be favored by the rule.

Though there is no showing of bad faith here, it must be conceded that there may be occasions where a defendant will deliberately inject some prejudicial matter before the jury which will compel the plaintiff to ask for a mistrial or suffer the consequences. But that misconduct is not necessarily restricted to the defendant. The plaintiff may also resort to the same unfair

tactics which will result in delay, perhaps in cases where it is to the advantage of the defendant to obtain a speedy trial. Those occasions, however, where either party shall engage in such unthical practices will no doubt be rare, and in most instances the infraction could be prevented by proper instructions from the trial court at the beginning of the trial, which, if violated, would lead to serious consequences. In this manner the rights of both parties may be adequately protected without either being favored by a simple rule of procedure. Furthermore, the impartial application of the rule will eliminate the anomalous situation that would arise by allowing a trial to proceed to a judgment that will be allowed to stand only if it is favorable to one of the parties, and where it is certain that a new trial must be ordered if the other party wins. To compel the trial to proceed under such a hazardous and uncertain outcome would be trifling with the authority and dignity of the court, and would be far more grievous than any inconvenience or harm the plaintiff might suffer by being subjected to the same penalties of waiver which are applied to the defendant under similar circumstances. We are therefore of the opinion that the plaintiff has waived his right to complain of the erroneous conduct of defendant's counsel. We also think that there was no reversible error in the casual reference to insurance in the jury room after the jury had agreed upon all the issues answered except the one as to damages, and particularly since the question of damages became immaterial in view of the other findings. Blue Diamond Motor Bus Co. v. Hale, 69 S. W. (2d) 228; Russell v. Adams, 18 S. W. (2d) 189; Mike v. Leath, 26 S. W. (2d) 726.

The plaintiff presented two other points to the Court of Civil Appeals which were not discussed by that court. Since we have jurisdiction of these questions, it becomes our duty to decide them.

■ The first of these is with reference to other alleged jury misconduct. It appears that during the deliberations of the jury, after they had answered the issues convicting the defendant of negligence proximately causing the injuries, but before they had fully agreed on the issues as to plaintiff's negligence, some of the jurors asked what effect their answers to these issues would have upon the amount set as damages. Some of them expressed the opinion that if they answered the issues as they finally did the plaintiff would recover the whole sum, others thought he would recover only one half, while still others thought it would have no bearing on the amount of the damages. However, it further appears from the testimony of the jurors on

motion for new trial that no agreement was made or attempted to be carried out which would accomplish any particular result, but that each issue was answered according to the law and the evidence. The trial court found that the discussion and remarks of the jury were made in an honest effort to reconcile and compose the differences in the opinions of the jurors as to the manner each issue should be answered in the light of the evidence, and concluded that no misconduct occurred from which it reasonably appeared that injury resulted to plaintiff.

■ Of course, it is the intent and purpose of our special-issue practice, particularly under Rule 277 and 327, Texas Rules of Civil Procedure, that such issue shall be submitted and answered distinctly and separately, and without regard to the legal effect of the answers. Whenever a juror answers an issue with the distinct purpose in view that his answer shall have a preconceived legal effect on the judgment to be rendered, he violates the clear intention of the rules. On the other hand, though a juror may entertain the opinion that one or the other of the parties to the litigation should prevail, yet, if he considers each special issue without regard to the legal effect of the answer to be made, but solely from the viewpoint of arriving at the correct conclusion under the evidence, he is not guilty of misconduct because of a preconceived opinion as to the merits of the case. Scottino v. Ledbetter, 56 S. W. (2d) 282.

In Monkey Grip Rubber Co. v. Walton, 122 Texas 185, 53 S. W. (2d) 770, 773, in passing upon a similar assignment, this court said:

"It is such misconduct as will require a reversal if it be shown that a jury has agreed, in advance of answering the issues submitted, in whose favor the verdict should be, and thereafter attempts to answer the question submitted with a view of bringing about such result. Bradshaw v. Abrams (Tex. Com. App.) 24 S. W. (2d) 372.

"However, the mere agreement by members of a jury during their deliberation as to which party they think is entitled to a verdict is not alone sufficient to constitute reversible error. It must also be shown that the jury has deliberately attempted to make the same effective by framing the answers to the issues submitted in such a way as to accomplish the desired result."

In Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S. W. (2d) 62, 64, in again passing on the precise point, this court further said:

"The mere fact that the jurors discussed the fact that the issues would have to be answered in a given way if the employee was to recover is not alone sufficient to constitute misconduct of the jury. It must also appear that the jury designedly attempted to frame the answers to the issues so as to accomplish such a result."

Therefore, under these and other holdings of similar nature, we overrule this assignment. Waggoman v. Fort Worth Well Machinery & Supply Co., 124 Texas 325, 76 S. W. (2d) 1005; Beaumont, S. L. & W. R. Co. v. Richmond, 78 S. W. (2d) 232; Debes v. Greenstone, 260 S. W. 211; Morris v. Jackson's Model Laundry, 81 S. W. (2d) 798, writ refused; Harwell v. Reed, 50 S. W. (2d) 415.

■ The other point presented by plaintiff is that a new trial should have been granted because of an alleged conflict in the jury's findings. There were eight acts or omissions on the part of the plaintiff inquired about in the charge to the jury. Following each were companion issues of negligence and proximate cause, which in each instance, save one, were conditioned on affirmance answers to the preceding issues in the respective series. Each time, when so directed, the jury obeyed the instructions of the court not to answer the issues so conditioned unless they had answered the preceding issue in the same group in the affirmative. In the first and fourth of the groups the plaintiff was convicted of the act or omission, and of negligence and proximate cause. None of the questions in the second group was answered. In the third, fifth and sixth series he was acquitted of the act or omission charged. In the seventh and eighth he was convicted of the act or omission but acquitted of negligence. The sixth group, which is the one particularly in question, consisted of four issues. The first inquired if there was a leak around the bushing and nipple. It was answered in the negative. The second, which was conditioned on an affirmative answer of the first, asked if the plaintiff continued to make the test knowing of such leak, if any. It was not answered. The third, conditioned on an affirmative answer of the second, inquired if such conduct, if any, inquired about in the preceding issue was negligenece. It also was not answered. The fourth, for some reason, was unconditionally submitted. It asked if "such negligence, if any, was a proximate cause of said injury." It was answered in the negative.

Since this issue was submitted unconditionally and answered in the negative, the plaintiff contends that the finding has no

more relation to the series of questions of which it was a part, that is, the sixth group, than it did to the first and fourth groups where the two separate negligent acts or omissions of the plaintiff were each found to have been a proximate cause of the injuries sustained by him, and that by reason thereof the findings were mutually destructive.

We cannot agree with that contention. It is reasonable to assume that the jury answered the issue only because it was unconditionally submitted and, perhaps, because they had given a negative answer to the controlling issue in the group. It is hardly reasonable to assume that the jurors considered the issue related to acts or omissions in other or previous groups of issues where specific acts of negligence were found to constitute a proximate cause of the injury. It is the duty of the trial court to reconcile apparent conflicts in the jury's findings if this can be reasonably done in the light of the pleadings and the evidence, the manner in which the issues were submitted, and in view of the other findings when considered as a whole. Texas Indemnity Ins. Co. v. Bridges, 52 S. W. (2d) 1075, writ refused; Merritt v. King, 66 S. W. (2d) 464, writ refused. The trial court therefore correctly reconciled these findings in support of the judgment.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered January 5, 1949.

Rehearing overruled February 2, 1949.