**PHOENIX INDEMNITY CO., Appellant,**

v.

**David SKINNER, Appellee.**

No. 14836.

Court of Civil Appeals of Texas.

Dallas.

July 23, 1954.

Rehearing Denied Sept. 24, 1954.

R. T. Bailey, Dallas, for appellant.

White & Yarborough and W. E. Johnson, Dallas, for appellee.

CRAMER, Justice.

This is a workman's compensation proceeding by employee Skinner against appellant as insurer of Shedd-Bartush Foods, Inc., growing out of an injury received by Skinner in course of his employment on February 8, 1952, with recovery in prayer limited to $3,000 for temporary total and permanent partial incapacity. On the trial on the merits the jury in answer to special issues found appellee Skinner's weekly wage at $65 (he pled $63.50); that he sustained 18 weeks total and 200 weeks of 50% partial disability. On the verdict the court deducted $275 (the amount theretofore paid him in weekly installments) from the $3,000 sought and rendered judgment against appellant for $2,725; and it is from that judgment that this appeal has been duly perfected. Appellant here briefs three points. Points 1 and 2 briefed together in substance assert error in refusal to set aside the verdict (1) because the jury's findings on disability are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong; and (2) the jury having found disability as above set out and the overwhelming evidence showing plaintiff went back to work for his same employer, worked 51 hours, part of which was overtime, at the same rate of pay, during the week preceding June 17, 1953, and that he had worked continuously thereafter, taking off from work to attend the trial, for the same employer, putting in the usual hours, and that he had received one raise in pay since the accident and before the trial; therefore the jury's findings were so against the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. Appellee counters (1) the extent and duration of disability and (2) finding of 18 weeks total followed by 200 weeks partial disability were each amply supported by the evidence. These points require that we summarize the evidence. Appellee testified in substance that he was 43 years old; had farmed, then worked for his present employer, then returned to the farm for a while, returning back to work for his present employer; that he sustained the

injury here involved in the course of his employment about two months after he had returned to his work the last time. His employer makes oleomargarine. His job was to pump the oil from railroad tank cars. He described how the lines to the top and bottom of the car functioned. It was during that work that a 40-lb. fitting he was taking off the tank car fell, bounced up and struck his right testicle. It hurt him then, that night, and the next day. He lay around Sunday, went to work Monday, but had to take off and go to the Company doctor who sent him home; advising him to go to bed and keep ice packs on his injury—on an hour and off an hour, and gave him some sort of shot; that he did as told two or three days, went back to the doctor and received another shot; kept on that treatment about two weeks, when the doctor told him to go back to work, that he he thought he would be all right. He worked three or four days, when it swelled up and got to hurting; the doctor then put him to bed, gave him additional shots, and after a few days sent him to a specialist who told him he would have to have an operation, which, being performed, he was told that his cords had been cut and that his injured part would shrink to about half normal size, and at time of trial that result had taken place. He still has pain, a shooting pain, from his groin down his right leg; feels as if something is drawing all the time; hurts worse when he strains. He went back to work June 8 or 10, and only lost a few days at the time. He is on the shipping dock now. Before the accident he made $1.25 per hour and had some overtime. After he went back to work, made $1.05 per hour and now makes $1.20 per hour; now works on the dock loading 26-lb. cases of margarine in trucks. This work doesn't bother him so much because he takes care of himself; doesn't strain so much. If he lifts anything heavier, it bothers him. His injury hurts worse when he stands on his feet a long time; is hardly ever free from pain. Off the job, he lies down most of the time; watches television, etc.; he did not lie around that way before. He is now weak, gives out, does not feel like doing anything,

is nervous and not the man he used to be; and that condition has not improved any. Later he went to see his own doctor who gave him shots once or twice a week for some time; they made him feel better; he last saw him in June 1953. Skinner's wife testified they had been married 23 years; Skinner had farmed and worked for a salary during that time. After the injury he was off for a while, then tried to work, but after a few days had to go to the hospital where he had an operation; was in the hospital about a week, then brought home. Since then he does not have the strength and energy he had before; he just lies around, doesn't have any energy whatever; has not improved any, although he goes to work each day. On cross-examination she stated his work is about seven miles from where he lives; that she works beyond his work and drives, letting him out first; that he rides home with another party. His hourly wage before the injury was $1.25, now $1.20. The doctor dismissed him before he went back to work; he did not thereafter go back to the Company doctor, but did go to his own doctor in June 1953. On re-direct she testified her husband was a nervous wreck when he went to the doctor in June. The doctor gave him shots which improved the condition of his nerves. He now has crying spells, would sit down and cry, two hours at the time; was a complete nervous wreck. His doctor's treatment improved that some. Two doctors testified, one for each party. Appellant's doctor, that appellee was able to go back to work about June 1, 1952. Appellee's doctor testified that Skinner had not been able to hold down a job of manual labor and at time of trial had a 50% disability.

The plant superintendent testified as to payment of salary since the accident. Skinner went back to work and received his first payroll check June 10, 1952, and additional checks fairly regular thereafter. Skinner, taking the stand the second time, testified the accident was on Friday; that he worked until Saturday noon; he began feeling worse on Sunday; went back to work on Monday and was sent to the doctor about

10:00 a. m. that day, and went home and to bed; used ice packs; went back Wednesday or Thursday when the doctor gave him a shot; went home and to bed; was treated by the Company doctor for about four weeks, then went back to work for three or four days. Later he was sent to a specialist, was operated March 19, 1952, went back to work the first part of June, and was transferred to the mixing room. While on the dock he and another employee handled 100-lb. sacks in making truck deliveries; he lifts and carries 26-lb. cases now. He has also serviced equipment, washed and greased trucks, handled cases of prune juice. His employer's insurer paid all doctor bills and paid him $25 per week compensation for a number of weeks—he did not know the exact number.

After considering the evidence as a whole we have reached the opinion that plaintiff's evidence on his ability or lack of ability to work, labor, and earn money since the accident, having been believed by the jury, was sufficient to sustain the verdict and judgment, and that it was not so against the great weight of the evidence as to require a new trial. Points 1 and 2 are over-ruled.

Point 3 asserts that under the evidence the court erred in permitting Skinner's counsel in his closing argument to state that Skinner's employer " 'comes and hugs up with the insurance company'; he (the plaintiff) 'hasn't sued for a mint of money'—'he sued for only $3,000.00'; that they did an operation on him 'taking out part of that organ there and eliminating his sexual power'; that now 'sexual power cut off at 43 years old'; that 'This man to my mind, under this evidence, is in worse shape with the condition that he's in, in worse shape than he would be if he was confined in bed with a broken back. He can just think about things and that's all.' " Also erred in refus-

ing to set aside the verdict and grant a new trial since the findings to issues 2 to 5 inclusive are against the great preponderance of the evidence and were influenced by the cumulative effect of such prejudicial and inflammatory argument.

Our examination of the record shows that appellant's bills of exception material to this point were each qualified by the trial court to the effect that the argument in each instance complained of was not objected to at the time it was made and that there was no request thereafter to instruct the jury not to consider it. The record fails to show a motion for mistrial by appellant either separately to each portion of the argument shown by the bills of exception, or because of the cumulative effect of the argument as a whole. While we are doubtful as to reversible error if properly objected to and such objection overruled by the court, we have reached the conclusion that, under the authorities, failure to move for a mistrial and thereby taking their chances with the jury before objecting thereto waived their right to complain of the argument separately as to the evidence shown by each bill, or thereafter as to the cumulative effect of all said argument, waived the error, if any, in the argument had it been properly taken advantage of at a proper time.

The party cannot now, as they were permitted to do in the past, fail to object and move for a mistrial and wait and take a chance with the jury and after a verdict is rendered against it, complain of improper argument. Safety Casualty Co. v. Bennett, Tex.Civ.App., 259 S.W.2d 596, syl. 8, by this Court; Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558, syl. 3, by our Supreme Court. Point 3 is overruled.

Finding no reversible error in appellant's points, the judgment below is

Affirmed.