Byron BILLINGSLEY, Appellant,

v.

SOUTHERN PACIFIC COMPANY, Appellee.

No. 164.

Court of Civil Appeals of Texas.

Tyler.

March 10, 1966.

Rehearing Denied March 31, 1966.

———————

Robert Fairchild, Fairchild & Hunt, Center, for appellant.

Wardlow W. Lane and Joe Davis Foster, Center, Baker, Botts, Shepherd & Coates, McGregor, Sewell, Junell & Riggs, Houston, for appellee.

DUNAGAN, Chief Justice.

This suit was instituted in the District Court of Shelby County, Texas, by appellant, Byron Billingsley, against the appellee, Southern Pacific Company, seeking damages for bodily injury sustained when a vehicle operated by appellant was allegedly struck by appellee's train at a rural crossing in Shelby County on the night of October 31, 1963. Actionable negligence in numerous respects, including the maintenance of an extra-hazardous crossing, was alleged against the railroad. Appellee alleged defensively numerous acts of contributory negligence, including excessive speed, on the part of appellant. The jury, in answer to twenty-eight Special Issues, found that the operators of appellee's train did not fail to ring the train's bell continuously beginning at a point 1,320 feet from the crossing until it reached the crossing; that they did not fail to blow the whistle beginning at a distance of 1,320 feet from the crossing and continuing until it reached the crossing; and that they did not fail to blow the whistle after appellant's vehicle became plainly visible to them. In answer to Special Issues Nos. 3, 4 and 5, however, the jury found that the crossing in question was extra hazardous; that appellee's failure to maintain a mechanical warning device thereat was negligence; and that such negligence constituted a proximate cause of the collision. No other act of primary negligence was found against appellee.

In answer to the Issues submitted relating to the conduct of appellant, (Special Issues Nos. 16 through 26) the jury absolved him of alleged negligence in failing to make a timely application of brakes on his automobile; in failing to exercise ordinary care to listen for an approaching train; and in operating his vehicle with defective brakes. The jury found that appellant failed to keep a proper lookout for the approaching train, but that such failure was not a proximate cause of the collision. The jury further found, however, that as appellant approached the crossing he was operating his automobile at an excessive rate of speed (Special Issue No. 20) [1] and that such conduct constituted a proximate cause

1. SPECIAL ISSUE NO. 20—Do you find from a preponderance of the evidence that at the time and on the occasion in question as C. B. Billingsley approached the crossing in question, he was operating the automobile at a speed in excess of that at which a person of ordinary prudence in the exercise of ordinary care would have operated it under the same or similar circumstances?
Answer "Yes" or "No."
ANSWER Yes

of the collision (Special Issue No. 21).[2] The jury found that the accident was not unavoidable and awarded damages to appellant. He moved the trial court to disregard the jury's findings to Special Issues Nos. 20 and 21 because there was no evidence, or an insufficiency of evidence, to support them. The motion was overruled and judgment entered on the verdict for appellee. Appellant's motion for new trial having likewise been overruled, this appeal has been perfected.

The first nine Assignments of Error, as grouped by appellant for discussion, relate to the jury's findings in answer to Special Issues Nos. 20 and 21 that, as appellant approached said crossing on the occasion in question, he was operating his automobile at an excessive rate of speed. By appropriate Assignments, appellant claims that (a) there is no evidence of probative force to support such findings; (b) the evidence is insufficient to support them; and (c) the findings are against the great weight and preponderance of the evidence.

 Under the well settled rule for appellate determination of such Assignments, we are required to dispose of the "no evidence" points before passing upon the questions of "insufficiency of evidence." In determining the former, it is our duty to consider only the evidence and the inferences favorable to the findings and disregard all evidence and inferences to the contrary. Garza v. Alviar, Tex., 395 S.W.2d 821 (S.Ct.) 1965; Hartford Accident & Indemnity Company v. Gant, 346 S.W.2d 359 (Tex.Civ.App.) 1961, no writ; Higginbotham v. O'Keeffe, 340 S.W.2d 350 (Tex.Civ.App.) 1960, ref. n. r. e.; and Gregory v. Tyler Grain And Storage Company, 341 S.W.2d 221 (Tex.Civ.App.) 1960, no writ; Calvert "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas Law Review 361. If we conclude there is evidence of probative force supporting the findings, it thereupon becomes our duty to determine the "insufficiency of evidence" Assignments. In making such a determination, we must consider and weigh all of the evidence in the case to determine whether there is a sufficiency of evidence to support the findings or whether they are so against the great weight and preponderance of the evidence as to be clearly erroneous. In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). It becomes necessary, therefore, to review in some detail the evidence relating to appellant's speed in order to determine the questions presented.

On October 31, 1963, appellant, a mechanic, left his home in Timpson, Texas, and was en route to repair a truck which he understood was disabled between the Silas and Stockman Communities in Shelby County. He was traveling upon Farm-to-Market Road No. 2667 approximately four miles south of Timpson and was approaching appellee's railroad crossing with which he was familiar. The roadway for some distance before reaching the railroad crossing runs somewhat parallel to the tracks and, considering the direction appellant was traveling, curves to the left and crosses the tracks at approximately a 45 degree angle, and then curves back to the right after crossing the tracks. The road at the crossing where the accident occurred is level, two-lane and black topped. Appellant was alone in his Lincoln convertible and he testified that as he approached the crossing, he was driving "about 60 miles per hour," but reduced his speed to an estimated 45 to 50 miles per hour shortly before he reached it.

He testified the weather was cloudy and hazy and the windows of his automobile were up. There was a brush thicket be-

2. SPECIAL ISSUE NO. 21—Do you find from a preponderance of the evidence that such operation of the automobile, as inquired about in the foregoing special issue, if you have so found, was a proximate cause of the collision in question?
Answer "Yes" or "No."
ANSWER Yes

tween him and the railroad crossing. This crossing was located about three and one-half to four miles from appellant's shop and he testified in detail with reference to its approaches and the conditions surrounding the same. He stated that the "posted speed limit" was probably 55 miles per hour and that he was traveling about 60 miles per hour until he reached the curve leading onto the crossing. He did not know the exact speed of his vhicle at the time he first applied his brakes.

Appellant produced witness R. H. Vinyard, a Texas Highway Patrolman, who testified that during his thirty years' service with the Department of Public Safety, he had investigated numerous collisions throughout the state. He had attended a fourteen week school in Austin, conducted by the Department, where he received training in the investigation of traffic accidents. Appellant's counsel qualified the witness as an expert accident investigator. He testified that he was called to investigate the accident involved here and arrived at the scene about 10:30 a. m. the morning following the accident. He made a personal investigation of the physical facts thereat, including the location of the debris, as well as the measurement of skid marks leading up to the crossing, and found thirty-five steps of skid marks up to a point about eighteen inches beyond the first rail of the crossing. He established the point of contact between the automobile and the train. Upon measuring the distance from the automobile to the crossing he found it to be 350 feet. There were no breaks in the skid marks. After appellant's counsel had qualified this witness as to his ability to determine speeds of vehicles from skid marks, the witness testified that a vehicle going 60 miles per hour would require 270 feet within which to stop. He further testified that a motorist approaching this crossing would be 150 feet from the crossing before he could determine whether a train was approaching. Numerous exhibits of the damage resulting to appellant's automobile were introduced into evidence by appellant and

this witness testified also as to the physical damage to the automobile.

On cross-examination appellee's counsel elicited from Vinyard that at the time of his investigation he estimated the speed of appellant's vehicle at 70 miles per hour prior to application of brakes. He also estimated, without objection, that a "safe speed" at that particular location under the existing conditions was 35 miles per hour.

Appellee produced as a witness Dr. Wm. H. Tonn, Jr., a consulting Engineer who, since 1948, has been engaged in accident-analysis work. Dr. Tonn had made a study of the automobile involved in the collision. He had also made photographs of the vehicle and testified in great detail that he examined exhibits showing the skid marks at the scene of the accident and had determined that the speed of appellant's vehicle when the brakes were first applied was within the range from 56 miles per hour to a speed "in excess of" 65 miles per hour. Dr. Tonn based his opinion upon his observations at the scene of the accident, an examination of the damage to the vehicle, the appellee's photographic exhibits, measurements, mathematical calculations and testimony in the record.

Applying the rules hereinabove set forth, there is no difficulty in determining that there was considerable evidence of probative force to support the jury's findings in answer to Special Issues Nos. 20 and 21.

It is well settled in this state that experts may give their opinions as to rates of speed from facts detailed to them. Stamper v. Scholtz, 29 S.W.2d 883 (Tex. Civ.App.) 1930, err. ref.; and Zepeda v. Moore, 153 S.W.2d 212 (Tex.Civ.App.) 1941, err. dism. Under the circumstances shown in the record, the witnesses were qualified to express their opinions as to the speed of appellant's automobile and such testimony constituted evidence of probative force supporting the findings of the jury in answer to Special Issues Nos. 20 and 21. Missouri-Kansas-Texas R. Co. v. Hamilton, 314 S.W.2d 114 (Tex.Civ.App.) 1958, n. r.

e.; Davis v. Younger Bros., 260 S.W.2d 637 (Tex.Civ.App.) 1953, n. r. e. and Linkenhoger v. Gilbert, 223 S.W.2d 308 (Tex.Civ. App.) 1949, ref., n. r. e.

In support of his contention that the opinion evidence of Vinyard and Tonn constituted no evidence of probative force, appellant relies upon the case of Dallas Railway & Terminal Company v. Gossett, 156 Tex. 252, 294 S.W.2d 377 (1956), wherein the Supreme Court of Texas, in passing upon whether an ordinance of the City of Dallas had been properly proved, held that the naked and unsupported opinion or conclusion of a witness, offered without objection, constituted no proof of the provisions and legal effect of a municipal ordinance. We do not see the applicability of the cited case to the one at bar. The opinions and conclusions of Vinyard, whose qualifications were undoubtedly established by appellant's counsel, as well as the opinion of Tonn, were not "naked and unsupported" but, on the contrary, were amply supported by appellant's admissions, the physical facts, and numerous photographs and exhibits in evidence. Much of appellant's argument is based upon the assumption that since there was no direct evidence showing that appellant's speed, as he approached the crossing, exceeded the "legally posted speed limit," his speed could not be excessive. Although a motorist may not be exceeding the "legally posted speed limit," nevertheless, he is under the duty to drive no faster than an ordinarily prudent person in the exercise of ordinary care would drive under the same or similar circumstances. A speed may be held excessive under the circumstances although below the "legally posted limit." Seay v. Kana, 346 S.W.2d 384 (Tex.Civ.App.) 1961, no writ;

Vardilos v. Reid, 320 S.W.2d 419 (Tex.Civ. App.) 1959, no writ. Moreover, if approaching and crossing a railway grade crossing, a motorist has the statutory duty to drive at a speed no greater than is reasonable and prudent under the conditions then existing. Article 6701d, Section 166, Vernon's Ann.Civ.St. of the State of Texas. The jury, as judge of the facts proved, was authorized to draw reasonable deductions from the evidence and inferences adduced. Its findings may not be disregarded where supported by evidence of probative value, coupled with inferences which may properly be drawn therefrom. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

Having determined that the findings to the Issues aforesaid were supported by evidence of probative force, it becomes our duty to review and consider all of the evidence in the record relating to the question of appellant's speed to determine whether the evidence is sufficient to support the findings and whether such findings are not against the great weight and preponderance of the evidence. In re: King's Estate, supra. Having reviewed the entire record and having considered not only the evidence and inferences therefrom supporting the findings, but also all of the evidence and inferences opposed thereto, we conclude that the findings to the Issues are amply supported by sufficient evidence and the same are not against the great weight and overwhelming preponderance of the evidence.

Assignments of Error Nos. 10, 11 and 12 assert that the jury's answers to Special Issues Nos. 20 and 21, relating to excessive speed of appellant, are in irreconcilable conflict with its answers to Special Issues Nos. 1[3] and 2.[4] Prior to entry of judgment,

---

3. SPECIAL ISSUE NO. 1—Do you find from a preponderance of the evidence that after the defendant's train became plainly visible and in hazardous proximity to the crossing in question, the plaintiff by the exercise of ordinary care could not have stopped his automobile within 50 feet but not less than 15 feet from the nearest rail of the railroad track?

Answer "He could have stopped," or "He could not have stopped."
ANSWER He could not have stopped.
In connection with your answer to the foregoing Special Issue, you are instructed that the defendant's train was plainly visible, if it was, when a rea-

appellant moved the court to disregard the answers to Issues Nos. 20 and 21. The court denied the motion and this action is the basis of claimed error.

■ It is the duty of the trial court to reconcile, where possible, seeming conflicts in the findings of the jury. If there is a reasonable explanation of the findings alleged to be conflicting, the court should so construe them as not in irreconcilable conflict. Perkins v. Mitchell, 153 Tex. 368, 268 S.W.2d 907 (1954); Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558 (1949); Stuckey v. Union Mortgage & Investment Company, 383 S.W.2d 429 (Tex.Civ.App.) 1964, ref., n. r. e.; Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97 (1939). Two findings will be considered to be in conflict only when they oppose each other in such a way that both cannot be true. Hancock v. Sammons, 267 S.W.2d 252 (Tex.Civ.App.) 1954, ref., n. r. e.; Maddox v. Ellison, 240 S.W.2d 398 (Tex. Civ.App.) 1951, no writ. Unless the answers are in such irreconcilable conflict so as to be mutually destructive, the verdict should not be set aside. Southwest Bitulithic Co. v. Dickey, 28 S.W.2d 264 (Tex. Civ.App.) 1930, no writ. And, in making a determination of irreconcilable conflict, a specific finding is generally held to control a general one. Bragg v. Hughes, 53 S.W. 2d 151 (Tex.Civ.App.) 1932, no writ; Cunningham v. Suggs, 340 S.W.2d 369 (Tex.Civ.App.) 1960, ref., n. r. e.; Sproles v. Rosen, 126 Tex. 51, 84 S.W.2d 1001 (1935); Fort Worth & Denver Railway

Company v. Britton, 310 S.W.2d 654 (Tex. Civ.App.) 1958, ref., n. r. e.; Speer, Law of Special Issues, p. 561, Sec. 432. It is never presumed that the jury intended to return conflicting answers and, if the same can be reconciled upon a reasonable basis, the court should sustain them. Casualty Underwriters v. Rhone, supra.

■ Applying the above principles to the findings of which complaint is here made, it is our conclusion that there is no irreconcilable conflict. Special Issue No. 20 inquired whether appellant, *as he approached the crossing in question,* was driving at a speed in excess of that at which a person of ordinary prudence in the exercise of ordinary care would have operated the vehicle under the same or similar circumstances. The jury answered in the affirmative and by its finding in answer to Special Issue No. 21 found that such conduct *was a proximate cause of the collision.* By its answer to Special Issue No. 1, the jury found that *after* appellee's train *became plainly visible and in hazardous proximity to the crossing,* appellant could not have stopped the automobile within 50 feet but not less than 15 feet from the nearest rail; and in answer to Special Issue No. 2, found that the inability of appellant *to so stop* was not caused by his own negligence. Thus the time element inquired about in the Issues differs materially. Special Issue No. 20 does not pinpoint the time to *after the train became plainly* visible, but, on the contrary, permits the jury to consider appellant's speed *as he approached the cross-*

---

sonably prudent person situated as was the plaintiff and exercising care for his own safety should have seen it.

You are further instructed in connection with your answer to the foregoing Special Issue that the defendant's train was "in hazardous proximity to the crossing," if it was, when, under all the surrounding facts and circumstances in evidence, the speed and nearness of the train was such that a reasonably prudent person, situated as was plaintiff, should have known that an attempt to proceed across the crossing ahead of the train was hazardous.

4. SPECIAL ISSUE NO. 2—Do you find from a preponderance of the evidence that the inability of the plaintiff to stop his automobile within 50 feet but not less than 15 feet from the nearest rail of the railroad track, if he could not have so stopped, was not caused by his own negligence, if any, as that term is herein defined?

Answer "It was caused by his own negligence," or "It was not caused by his own negligence."

ANSWER It was not caused by his own negligence.

*ing* and, therefore, could and did reasonably refer to a distance traveled by appellant much greater than that specified in Special Issue No. 1. The evidence produced by appellant showed that a train approaching from the north was not plainly visible to a motorist until the motorist was within 150 feet of the crossing. Therefore, although appellant could not have stopped his vehicle within the distance specified, the jury could reasonably conclude that his speed was excessive long before he reached the point where the train became "plainly visible." The findings to both Special Issues Nos. 20 and 1 could, under the evidence, be true. Special Issue No. 2, conditioned upon an affirmative finding to Special Issue No. 1, obviously referred to appellant's conduct after the train was "plainly visible." Nonnegligent conduct on the part of appellant *after* the train became "plainly visible" did not preclude the jury from finding appellant's conduct negligent *before* the train became "plainly visible." The findings may be easily reconciled on the basis of the time element alone. Brown v. Dale, 395 S.W.2d 677 (Tex.Civ.App.) 1965, ref., n. r. e.

Moreover, the jury's findings on Special Issues Nos. 20 and 21 are specific in nature and, for the purpose of determining conflict, should be given effect over the more general findings of the answers to Special Issues Nos. 1 and 2. Bragg v. Hughes, supra. Since the findings are not mutually destructive, but are capable of being reasonably reconciled under the evidence, we hold that they are not in irreconcilable conflict, and the trial court did not err in refusing to disregard the findings to Special Issues Nos. 20 and 21.

The last group of Assignments of Error, 13 through 47, complains of the action of the trial court in submitting over appellant's objections, Special Issues Nos. 16 through 26, referred to hereinabove, and in entering judgment on the verdict for appellee. Appellant contends that the Issues aforesaid are evidentiary and not ultimate ones; that the same inquiries are contained in Special Issues Nos. 1 and 2; and that by submitting the defensive Issues the court, in effect, was commenting upon the weight of the evidence. With the exception of Special Issues Nos. 18, 20 and 21, all of the defensive Issues were answered favorably to appellant. The jury found, in answer to Special Issue No. 18, that appellant failed to keep a proper lookout for the train, but in answer to Special Issue No. 19 that such failure was not a proximate cause of the collision. As to all other defensive Issues, appellant obtained favorable findings thereon and therefore he cannot complain of their submission. Cogbill v. Martin, 308 S.W.2d 269 (Tex.Civ.App.) 1957, no writ. Appellant argues that the court having submitted Special Issues Nos. 1 and 2—appellant's theory of excusable violation of Section 86 of Art. 6701d—had ended the matter and appellee was not entitled to any defensive Issues although the same were pled and the evidence raised them. Appellant contends that if he had an "excuse" to violate the statute, he could not be guilty of contributory negligence in other respects. To sustain appellant's position, it would be necessary to hold, in effect, that the defenses provided by Section 86 of Article 6701d are exclusive and that the railroad in a crossing accident is not entitled to assert defenses independent of the statute such as excessive speed, improper lookout and similar matters. The statute did not have the effect of abolishing other common law defenses available to the railroad. Thus in Texas & New Orleans Railroad Co. v. Day, 159 Tex. 101, 316 S.W.2d 402 (1958), other defenses were submitted; and in Martin v. Texas and New Orleans Railroad Company, 375 S.W.2d 554 (Tex. Civ.App.) 1964, no writ, the court recognized common law duties on the part of the motorist in addition to the statutory duties required by Section 86 aforesaid; and in Texas & N. O. R. Co. v. Stewart, 248 S.W.2d 177 (Tex.Civ.App.) 1952, ref., n. r. e., numerous acts of contributory negligence, including excessive speed of the motorist, were submitted. See also Lackey v. Gulf, C. & S. F. Ry. Co., 225 S.W.2d 630

(Tex.Civ.App.) 1949, no writ; Lewis v. Thompson, 244 S.W.2d 286 (Tex.Civ.App.) 1951, ref., n. r. e.; Peters v. Chicago, R. I. & P. R. Co., 257 S.W.2d 860 (Tex.Civ. App.) 1953, no writ. While the findings to Special Issues Nos. 1 and 2 were favorable to appellant and excused his violation of the duties prescribed by Section 86 of Article 6701d, they did not have the effect of abolishing other common law duties of appellant or denying other defenses to appellee. Under a long line of authorities in this state, any fact or group of facts which, if true, would constitute a ground of recovery or defense, if pled and supported by evidence, is entitled to an affirmative submission to the jury. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517 (1922); Rule 277, Texas Rules of Civil Procedure. Special Issues Nos. 20 and 21 were ultimate controlling Issues and were submitted properly. Villanueva v. Rodriguez, 300 S.W.2d 668 (Tex.Civ.App.) 1957, ref., n. r. e. The appellee having obtained favorable findings thereon was entitled to judgment.

Finding no reversible error herein, the judgment of the trial court is affirmed.