**En Banc Consideration Granted; Order, Concurrence, and Dissents to Order filed July 27, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00967-CV

---

## WERNER ENTERPRISES, INC. AND SHIRAZ A. ALI, Appellants

## V.

## JENNIFER BLAKE, INDIVIDUALLY AND AS NEXT FRIEND FOR NATHAN BLAKE, AND AS HEIR OF THE ESTATE OF ZACKERY BLAKE, DECEASED; AND ELDRIDGE MOAK, IN HIS CAPACITY AS GUARDIAN OF THE ESTATE OF BRIANNA BLAKE, Appellees

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2015-36666**

---

## DISSENT TO ORDER

More than twenty months after this case was first submitted to a panel for decision, five justices on this court have voted to order sua sponte en banc consideration in the first instance, without the issuance of any panel opinions, even though the panel generated a majority opinion and a dissenting opinion, each of

which stands ready to be issued. No party in this case has requested en banc consideration, and the en banc majority has not given any reason for using this exceedingly rare procedure at this late stage of the proceedings. Going directly to en banc has historically only been done for a few reasons. First, it is sometimes done if a panel believes it is necessary to overrule a prior opinion of that same court. However, this appeal does not raise any question as to whether this court, sitting en banc, should overrule one of its precedents. Second, a court may go directly to en banc if the panel was unable to agree on a judgment. That is not the case here. Third, a court may go directly to en banc if the court concludes that doing so would conserve resources because, given the issues in the case, en banc rehearing would almost certainly be granted regardless of the panel's decision. After more than twenty months of consideration at the panel level, granting en banc consideration in the first instance at this late stage does not conserve the resources that normally would be saved by skipping panel consideration. Even if en banc review of this case were otherwise appropriate, granting en banc consideration at this late stage deprives the parties of the ability to consider the panel opinions and provide the court feedback through rehearing motions and responses. There is simply no reason for this court to send the parties directly to en banc, not pass go, and not collect $200.

I. **A Texas intermediate court of appeals granting en banc consideration in the first instance is exceedingly rare, and the en banc court should explain why it has taken this highly unusual action.**

Frequently requested but rarely granted, en banc rehearing is disfavored and is reserved for a tiny percentage of cases that meet one or both of two hard-to-satisfy requirements.[1] En banc rehearing occurs after the panel considers the case,

---

[1] *See* Tex. R. App. P. 41.2(c).

issues an opinion and judgment, along with any separate writing, and the parties have an opportunity to present briefing in response to the court's opinion and judgment, and any separate writing, including the parties' views as to whether the en banc court should review the case.[2] Texas courts of appeals have the power to grant en banc consideration of a case in the first instance, but their resort to this procedure has been exceedingly rare. Research indicates that in the history of Texas jurisprudence an intermediate court of appeals with more than three justices has ordered en banc consideration of a case in the first instance only about a dozen times.[3] The en banc court should explain why it has taken this highly unusual action.

## II. This appeal does not raise any question as to whether a precedent of this court should be overruled.

Among these few cases in which Texas intermediate courts of appeals have ordered en banc consideration of a case in the first instance, several of the en banc courts have done so to overrule a precedent established by a prior panel of the court.[4] This makes sense because one court of appeals panel cannot overrule the holding of a prior panel of the same court, so if an en banc court is inclined to overrule a prior panel precedent, the en banc court may decide that there is little to be gained from having a panel decide the case because the panel may not overrule

---

[2] *See* Tex. R. App. P. 41.1(a), 41.2(c).

[3] In this dissent, the term "en banc consideration" refers to an en banc court's consideration of a case in the first instance, and the term "en banc rehearing" refers to an en banc court's consideration of a case after a panel of the court has decided the case. The term "en banc review" refers generally to either of the foregoing situations.

[4] *See, e.g., Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 214–16 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (en banc) (granting en banc consideration in the first instance to overrule prior panel precedent); *Harris County v. Lawson*, 122 S.W.3d 276, 278 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (en banc) (same as *Ross*); *Bui v. State*, 68 S.W.3d 830, 834 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (en banc) (same as *Ross*).

the prior precedent.[5] In today's case, no party has argued that a precedent of this court should be overruled, and this appeal does not raise any question as to whether this court, sitting en banc, should overrule one of its precedents.

### III. The en banc majority did not grant en banc consideration in the first instance because a majority of the panel could not agree on a judgment.

Unless a court of appeals with more than three justices votes to decide a case en banc in the first instance, a case must be assigned for decision to a panel of the court consisting of three justices.[6] For a three-justice panel to decide a case, at least two of the justices on the panel must agree on the appellate judgment.[7] In any appeal, there are several different appellate judgments that might be proper in that case.[8] Thus, on a three-justice panel, each of the three justices may disagree with the other two justices on the panel as to the proper appellate judgment in the case.[9] No rule or statute provides a procedure to be followed when such an impasse occurs.[10] In the absence of a specific procedural remedy in this situation, the en

---

[5] *See Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc) (noting that under principles of horizontal stare decisis, a court of appeals panel is bound by a prior holding of another panel of the court absent a decision from a higher court or the court of appeals sitting en banc that is on point and contrary to the prior panel holding or an intervening and material change in the statutory law).

[6] *See* Tex. R. App. P. 41.1(a).

[7] *See id.*

[8] *See* Tex. R. App. P. 43.2.

[9] For example, one justice may conclude that the court of appeals should affirm the trial court's judgment. Another justice may determine that the court of appeals should reverse the trial court's judgment and render the judgment that the trial court should have rendered. And the third justice may conclude that the court of appeals should reverse the trial court's judgment and remand the case for further proceedings.

[10] Texas Rule of Appellate Procedure 41.2(b) provides for the Chief Justice of the Supreme Court of Texas to temporarily assign an eligible justice or judge to resolve an impasse when a case has been submitted to the en banc court and a majority of the en banc court cannot agree on an appellate judgment. *See* Tex. R. App. P. 41.2(b). Texas Rule of Appellate Procedure 41.1(b) requires the chief justice of the court of appeals to take one of three actions to resolve an impasse

4

banc court might resolve the deadlock at the panel level by granting en banc consideration in the first instance based on the extraordinary circumstances that a majority of the three-justice panel could not agree on a judgment and thus the panel could not decide the case.[11]

Thus, if a three-justice panel considers an appeal for a long period of time without deciding the case and then the en banc court grants en banc consideration in the first instance, one reason for the en banc court's action might be deadlock at the panel level.[12] In today's case, no deadlock occurred at the panel level. Instead, two of the justices on the panel agreed on a judgment and had a panel majority opinion ready to issue, and one of the panel members authored a dissenting opinion that also was ready to issue.

## IV. After more than twenty months of consideration at the panel level, granting en banc consideration in the first instance at this late stage does not conserve the resources that normally would be saved by skipping the panel stage.

An en banc court might skip the panel stage and consider an appeal en banc in the first instance if the court concludes that doing so would conserve scarce judicial resources because, given the issues in the case, en banc rehearing would almost certainly be granted regardless of the panel's decision. Though such efficiencies might have weighed in favor of en banc consideration in the first

arising when, after argument, one justice on a three-justice panel cannot participate in deciding the case and the two remaining justices cannot agree on the appellate judgment. *See id*. 41.1(b). Texas Rule of Appellate Procedure 41.1(c) provides a remedy for an impasse arising when, after argument on a court consisting of only three justices, one justice cannot participate in deciding the case and the two remaining justices cannot agree on the appellate judgment. *See id*. 41.1(c). No rule or statute provides a procedure to be followed when three justices participate in deciding an appeal at the panel level and none of them can agree on an appellate judgment. *See id*. 41.1, 41.2. No rule or statute provides that additional justices or judges may be assigned to the panel to resolve such an impasse. *See id*. 41.1, 41.2.

[11] *See* Tex. R. App. P. 41.1(a), 41.2(c).

[12] *See id*.

5

instance before or shortly after this case was first submitted for panel consideration, after twenty months of panel consideration and the generation of panel opinions that are ready to be issued, efficiency now weighs in the opposite direction. At this late stage of the proceedings, before considering whether to grant en banc review, this court should follow the normal procedure: (1) allow the panel opinions to issue, (2) allow the panel to act on any motions for panel rehearing, (3) consider any motion for en banc rehearing, and (4) consider whether the court should grant en banc rehearing.[13] Doing so would allow the parties an opportunity to (1) review the panel majority opinion and the panel dissenting opinion, (2) submit rehearing motions and responses in opposition, and (3) thus provide the court with feedback on these opinions and the various issues in this appeal, including the issue of whether the en banc court should review this case.

The trial in this case lasted 25 days. The reporter's record in this appeal contains more than 33,000 pages, and the clerk's record contains more than 5,800 pages. The parties have submitted lengthy briefing on the many appellate complaints asserted by appellants/defendants Werner Enterprises, Inc. and Shiraz A. Ali (collectively the "Werner Parties"). In a case with such a big record and so many complicated issues, the parties' briefing in response to the panel opinions likely would significantly aid this court in the disposition of this appeal as well as in the determination as to whether en banc review should be granted. By granting en banc consideration now, without the issuance of any panel opinions, the en banc court has prevented this court from obtaining the parties' feedback as to the panel opinions. That is not the objective of en banc consideration.

Rather than taking the exceedingly rare step of ordering en banc consideration in the first instance, the en banc court should follow the normal

---

[13] *See* Tex. R. App. P. 41.1(a) & 41.2(c).

procedure, allow the panel opinions to issue, allow the parties to respond, and then consider whether the court should grant en banc rehearing.[14] Even if the en banc court is convinced that it will grant en banc rehearing after the panel stage ends, following the normal procedure would very likely provide the en banc court with helpful briefing from the parties that would enhance the efficiency and the quality of the en banc court's adjudication of this case. The en banc court's failure to do so wastes a tremendous amount of scarce judicial resources with no apparent offsetting gain.

**V. This court should not grant en banc review because a panel opinion in this case can be crafted in which the court does not create or continue a lack of uniformity in this court's decisions, without any extraordinary circumstances requiring en banc review.**

Even ignoring the late stage of the panel proceedings, this court should not review this appeal en banc because a panel opinion in this case can be confected in which the court does not make en banc review necessary by triggering either of the en banc criteria.[15]

### A. The Tragic Accident

On December 30, 2014 (the "Accident Date"), Jennifer Blake and her three children, Nathan, Brianna, and Zackery (collectively the "Blakes") were passengers in a pickup truck owned and driven by Jennifer's friend, Zaragoza "Trey" Salinas, III (the "Salinas Truck"). While it was sleeting, the Salinas Truck was traveling in the left lane of eastbound Interstate 20 in West Texas at a speed of 50 to 60 miles per hour when Salinas lost control of the truck, apparently due to ice on the roadway, and the Salinas Truck crossed the 42-foot-wide, grassy median dividing the eastbound and westbound lanes of Interstate 20 and entered the

---

[14] *See id.*

[15] *See* Tex. R. App. P. 41.2(c).

westbound lanes. Appellant/defendant Shiraz A. Ali was driving a tractor-trailer (the "Werner Truck") owned by appellant/defendant Werner Enterprises, Inc. Ali was driving on the westbound side of Interstate 20. Testimony at trial showed that Ali was driving at about 50 miles per hour when Salinas lost control of his truck. As soon as Ali saw the Salinas Truck, Ali braked as hard as he could. Ali did not lose control of his truck. About two seconds after Salinas lost control of his truck, the Werner Truck hit the Salinas truck while the Werner Truck was traveling at about 43 miles per hour (the "Accident in Question"). Seven-year-old Zackery Blake died as a result of the accident. His 12-year-old sister Brianna suffered a severe traumatic brain injury and was rendered a quadriplegic. Nathan Blake suffered a broken shoulder blade, broken collar bone, bruised lung, and other injuries. Jennifer Blake suffered a mild traumatic brain injury, contusions, a hematoma, and other injuries.

## B. Trial Court Proceedings

In the trial court below, appellees/plaintiffs Jennifer Blake, Individually and as Next Friend for Nathan Blake, and as Heir of the Estate of Zackery Blake, Deceased, and Eldridge Moak, in his capacity as Guardian of the Estate of Brianna Blake (collectively the "Blake Parties") sued the Werner Parties. In addition to asserting that Werner was vicariously liable for Ali's negligence under the doctrine of respondeat superior, the Blake Parties asserted various direct negligence theories against Werner. The Blake Parties alleged that Werner, in the operation and maintenance of its vehicles and in its hiring, training, supervising, and directing of its employees and agents, owed a duty to the Blakes and the public at large to make use of Werner's property and carry out Werner's operations in a reasonably prudent manner, using ordinary care, skill, and expertise as would an ordinarily prudent commercial motor carrier under the same or similar circumstances, so as

8

not to cause foreseeable and unreasonable risks of harm to others. The Blake Parties asserted that Werner engaged in numerous acts or omissions constituting negligence. The Blake Parties also alleged that the Werner Parties' conduct constituted gross negligence that was a proximate cause of the occurrence in question resulting in damages to the Blakes. The Blake Parties sought actual damages against Ali and Werner, as well as exemplary damages against Werner.

The case proceeded to a jury trial that lasted 25 trial days. During trial Werner stipulated that Ali was acting in the course and scope of his employment at Werner, and thus Werner would be vicariously liable for Ali's conduct. After the close of all the evidence, the trial court denied various motions for directed verdict asserted by the Werner Parties, including a motion for directed verdict as to the derivative-liability theories of recovery against Werner on the grounds that Werner admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence that Werner was grossly negligent.

Over numerous objections by the Werner Parties, the trial court submitted the jury charge. In Question 1, the trial court asked about the negligence, if any, of Werner acting through employees other than Ali and excluding any negligence by Werner in training or supervising Ali. The trial court did not specify which acts or omission or negligence liability theories the jury should consider in answering Question 1. In Question 2, the trial court asked about the negligence, if any, of Werner acting through employees other than Ali and limited the question to the Blake Parties' negligent-supervision and negligent-training theories. In Question 3, the trial court asked the jury whether the negligence, if any, of Ali in the operation of the Werner Truck on the Accident Date was a proximate cause of the injuries in question. In Question 4, the trial court asked the jury whether the negligence, if any, of Salinas was a proximate cause of the injuries in question. In Question 5, the

9

trial court asked the jury to find a percentage of responsibility for Werner acting through its employees other than Ali, Ali, and Salinas if the jury answered "yes" to more than one liability question and if the jury found that the party caused or contributed to cause the injuries. In Questions 6 and 7, the trial court asked the jury to find percentages of responsibility based on instructions different from those in Question 5.

The jury rendered a 10-2 verdict. The jury answered "yes" to each of the first four questions. In response to Question 5, the jury found the following percentages of responsibility: 70% for Werner acting through its employees other than Ali, 14% for Ali, and 16% for Salinas. In response to Question 6, the jury found the following percentages of responsibility: 30% for Werner acting through its employees other than Ali, 32% for Ali, and 38% for Salinas. In response to Question 7, the jury found the following percentages of responsibility: 45% for Ali, and 55% for Salinas.

In its final judgment, the trial court relied on the percentages of responsibility found by the jury in response to Question 5. Accordingly, the trial court found that Werner is jointly and severally liable for all of the damages recoverable by the Blake Parties[16] and that Ali is liable for 14% of those damages. The trial court ordered that Jennifer Blake, Nathan Blake, and Brianna's guardian recover from Werner the respective damages found by the jury, after adding prejudgment interest and deducting an apportioned credit based on the settlement with Salinas. The trial court ordered that Jennifer Blake, Nathan Blake, and Brianna's guardian recover from Ali 14% of the respective amounts that the trial court ordered Werner to pay. Including prejudgment interest and court costs, the trial court's final judgment against Werner totaled more than $92 million and

---

[16] *See* Tex. Civ. Prac. & Rem. Code Ann. §33.013(b) (West, Westlaw through 2019 R.S.).

against Ali totaled more than $12.9 million.

### C. The Werner Parties' challenges to the sufficiency of the evidence showing that Ali owed a negligence duty

On appeal, the Werner Parties present six appellate issues and numerous appellate complaints under these issues. Under their first issue, the Werner Parties assert that the trial evidence is legally and factually insufficient to show that Ali owed any duty to the Blakes. Without triggering either of the en banc criteria,[17] a panel of this court could create an opinion in which the court concludes that Ali had a common law duty to operate the Werner Truck at a speed at which an ordinarily prudent person would operate under the same or similar circumstances and that the speed at which an ordinarily prudent person would drive under the same or similar circumstances may be below the speed limit.[18] The Werner Parties assert that Ali had no duty to actively monitor eastbound Interstate 20 to notice whether Salinas would encounter a patch of ice and lose control of the Salinas Truck. Presuming that Ali did not have this duty, the absence of this duty would not negate Ali's duty to operate the Werner Truck at a speed at which an ordinarily prudent person would operate the Werner Truck under the same or similar circumstances.[19] A panel of this court could conclude that notwithstanding the Werner Parties' arguments, as a matter of law, Ali owed a duty to drive at a speed at which an ordinarily prudent person would drive under the same or similar

---

[17] *See* Tex. R. App. P. 41.2(c).

[18] *See Fitzgerald v. Russ Mitchell Constructors, Inc.,* 423 S.W.2d 189, 191 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *accord Golleher v. Herrera*, 651 S.W.2d 329, 332–33 (Tex. App.—Amarillo 1983, no writ); *Adams v. Morris*, 584 S.W.2d 712, 717 (Tex. Civ. App.—Tyler 1979, no writ); *Hokr v. Burgett*, 489 S.W.2d 928, 930 (Tex. Civ. App.—Fort Worth 1973, no writ); *Billingsley v. Southern Pac. Co.*, 400 S.W.2d 789, 794 (Tex. Civ. App.—Tyler 1966, ref'd n. r. e.).

[19] *See Fitzgerald,* 423 S.W.2d at 191; *Golleher*, 651 S.W.2d at 332–33; *Adams*, 584 S.W.2d at 717; *Hokr*, 489 S.W.2d at 930; *Billingsley*, 400 S.W.2d at 794.

circumstances and that the trial evidence is legally and factually sufficient to establish that Ali owed this duty.[20]

### D. The Werner Parties' challenges to the sufficiency of the evidence showing that Ali breached a negligence duty

In their first issue, the Werner Parties assert that the evidence is legally and factually insufficient to support any finding that Ali was negligent at the time of the occurrence in question or on the Accident Date. In Question 3, the trial court asked the jury, "Was the negligence, if any, of Shiraz Ali in the operation of the Werner Truck on December 30, 2014, a proximate cause of the injuries in question?" The jury answered "yes."

Ali testified that there was never any ice anywhere on Interstate 20 from the time Ali left Dallas until the time of the Accident in Question. Some trial evidence would support a finding that there was no ice on the part of Interstate 20 on which Ali was operating the Werner Truck and that Ali operated the truck at a speed at which an ordinarily prudent person would operate the truck under the same or similar circumstances. Nonetheless, other trial evidence supports findings to the contrary.

The Werner Parties assert that Ali was driving well below the speed limit of 75 miles per hour. But, the speed at which an ordinarily prudent person would operate a vehicle under the same or similar circumstances may be below the speed limit.[21] Trial evidence showed that the Werner Truck was traveling at about 50 miles per hour when Ali hit the brake in response to Salinas losing control of the

---

[20] *See Pagayon v. Exxon Mobil Corp*., 536 S.W.3d 499, 503 (Tex. 2017); *Fitzgerald,* 423 S.W.2d at 191; *Golleher*, 651 S.W.2d at 332–33; *Adams*, 584 S.W.2d at 717; *Hokr*, 489 S.W.2d at 930; *Billingsley*, 400 S.W.2d at 794.

[21] *See Fitzgerald,* 423 S.W.2d at 191; *Golleher*, 651 S.W.2d at 332–33; *Adams*, 584 S.W.2d at 717; *Hokr*, 489 S.W.2d at 930; *Billingsley*, 400 S.W.2d at 794.

Salinas Truck. Evidence at trial showed that Texas Department of Public Safety Officer Corey Vanderwilt issued a citation to a driver for driving at an unsafe speed because the driver was driving 20 to 30 miles per hour westbound on Interstate 20 at 3:00 p.m. on the Accident Date about 4.5 miles east of the location of the Accident in Question.[22]

The Werner Parties assert that (1) Ali was driving within his lane of travel, on an open road, with the right of way, and in control of his vehicle; (2) when Ali realized that the Salinas Truck was out of control, 2 seconds before impact, Ali responded in a reasonable and prudent manner by braking and bringing the Werner Truck to a controlled stop; and (3) Ali never lost traction or experienced any diminished visibility. Without making en banc rehearing necessary,[23] a panel of this court could issue an opinion in which the court concludes that, even presuming for the sake of argument that each of these propositions is true, under the applicable standards of review, the trial evidence is legally and factually sufficient to support a finding that (1) Ali did not operate the Werner Truck at a speed at which an ordinarily prudent person would operate under the same or similar circumstances; (2) Ali did not operate the Werner Truck at a speed at which an ordinarily prudent commercial truck driver would operate under the same or similar circumstances; (3) Ali was negligent in the operation of the Werner Truck on the Accident Date; and (4) Ali was negligent in the operation of the Werner

---

[22] *See* Tex. Transp. Code Ann. § 545.351(b)(1) (stating that "[a]n operator . . . may not drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for actual potential hazards then existing") (West, Westlaw through 2019 R.S.); *id.* § 545.351(c) (stating that "[a]n operator shall, consistent with Subsections (a) and (b), drive at an appropriate reduced speed if . . . a special hazard exists with regard to traffic, including . . . weather or highway conditions").

[23] *See* Tex. R. App. P. 41.2(c).

13

Truck at the time of the occurrence in question.[24]

### E. The Werner Parties' challenges to the sufficiency of the evidence showing that Ali's negligence was a proximate cause of the injuries in question or of the occurrence in question

In their first issue, the Werner Parties assert that the evidence is legally and factually insufficient to support a finding that any negligence of Ali proximately caused the injuries in question or the accident, which is the occurrence in question. In Question 3, the trial court asked the jury, "Was the negligence, if any, of Shiraz Ali in the operation of the Werner Truck on December 30, 2014, a proximate cause of the injuries in question?" The jury answered "yes."

James Crawford, the Blake Parties' accident-reconstruction expert, testified that if Ali had been operating the Werner Truck at 15 miles per hour when Salinas lost control of the Salinas truck and if Ali took the same actions by promptly pressing on the brake as hard as Ali could, the Accident in Question never would have happened.

Andy Irwin, the Werner Parties' accident-reconstruction expert, testified that the Accident in Question would not have occurred if the Werner Truck had been traveling at 15 miles per hour and in the same location on Interstate 20 westbound

---

[24] *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Fitzgerald*, 423 S.W.2d at 191; *Golleher*, 651 S.W.2d at 332–33; *Adams*, 584 S.W.2d at 717; *Hokr*, 489 S.W.2d at 930; *Billingsley*, 400 S.W.2d at 794. At the charge conference, the trial court overruled various objections by the Werner Parties to Question 3, including the following: (1) the trial court should change each reference in Question 3 to "commercial truck driver" to "person"; and (2) the trial court should delete "on December 30, 2014" in Question 3 and replace it with "at the time of the occurrence in question." A panel of this court would not need to address whether the trial court erred in overruling either of these objections, because the panel could conclude that the trial evidence is legally and factually sufficient to support a finding that Ali breached his negligence duty regardless of whether the trial court erred in overruling either of these objections.

14

when Salinas lost control of the Salinas Truck. Irwin testified that in this scenario, the Werner Truck would have come to a stop "before the crash happen[ed]." Irwin agreed that the Accident in Question would not have happened if the Werner Truck had been traveling at 15 miles per hour. According to Irwin "had [Ali] been at 15 [miles per hour] and assuming no other changes to the stream of traffic, [Ali] doesn't have the crash. That's a mathematical fact."

Without triggering either of the en banc criteria,[25] a panel of this court could generate an opinion in which the court concludes that under the applicable standards of review, the trial evidence is legally and factually sufficient to support a finding that (1) Ali's failure to operate the Werner Truck at a speed at which an ordinarily prudent commercial truck driver would operate under the same or similar circumstances was a proximate cause of the occurrence in question and the injuries in question; (2) Ali's failure to operate the Werner Truck at a speed at which an ordinarily prudent person would operate under the same or similar circumstances was a proximate cause of the occurrence in question and the injuries in question; (3) Ali's negligence was a substantial factor in bringing about the Blakes' injuries and the Accident in Question, without which these injuries and this accident would not have occurred; (4) Ali's negligence was such that a commercial truck driver or a person using ordinary care would have foreseen that the Accident in Question or the injuries to the Blakes, or some similar accident or injury, might reasonably result therefrom; and (5) Ali's negligence in operating the Werner Truck was a proximate cause of the Accident in Question and the injuries to the Blakes.[26]

---

[25] *See* Tex. R. App. P. 41.2(c).

[26] *See City of Keller,* 168 S.W.3d at 823, 827; *Maritime Overseas Corp.*, 971 S.W.2d at 406–07; *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex. 1989); *Biggers v. Continental Bus Sys., Inc.*, 303 S.W.2d 359, 363–67 (Tex. 1957); *Villareal v. Zouzalik*, 515 S.W.2d 742, 745 (Tex.

15

***F. The question of whether the Blake Parties' derivative theories of negligence against Werner fail as a matter of law under the Admission Rule***

In their third issue, the Werner Parties note that the Supreme Court of Texas has not yet ruled definitively on the existence, elements, and scope of negligence theories against an employer for the negligent training, negligent supervision, negligent hiring, or negligent retention of an employee, or for related negligence theories, although intermediate courts of appeals have done so.[27] The Werner Parties assert that, even presuming that such theories generally are viable, the negligence theories against Werner based on the acts or omissions of Werner employees other than Ali that the trial court submitted to the jury in Question 1 or Question 2 (the "Question 1 & 2 Theories") fail as a matter of law for various reasons. In arguing one of these reasons, the Werner Parties assert that this court should adopt the rule that the Question 1 & 2 Theories failed as a matter of law because Werner admitted at trial that Ali was acting in the course and scope of his employment at Werner, thus subjecting Werner to vicarious liability under the doctrine of respondeat superior for all damages proximately cause by Ali's negligence. In this dissent the term "Admission Rule" refers to the following rule: if an employer admits that an employee was acting in the course and scope of his employment when the employee allegedly engaged in negligent conduct, that admission bars a party allegedly injured by the employee's negligence from

Civ. App.—San Antonio 1974, no writ.). At the charge conference, the trial court overruled various objections by the Werner Parties to Question 3, including the following: (1) the trial court should change each reference in Question 3 to "commercial truck driver" to "person"; and (2) the trial court should delete "on December 30, 2014" in Question 3 and replace it with "at the time of the occurrence in question"; and (3) the question should refer to the "occurrence in question" rather than the "injuries in question." A panel of this court would not need to address whether the trial court erred in overruling any of these objections, because the panel could conclude that the trial evidence is legally and factually sufficient to support a finding that Ali's negligence was a proximate cause of either the occurrence in question or the injuries in question, regardless of whether the trial court erred in overruling either of the first two objections.

[27] *See JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 842 (Tex. 2018).

16

pursuing derivative theories of negligence against the employer.

Under the theory of respondeat superior, an employer is vicariously liable for the negligent acts or omissions of its employee if the employee's negligent acts or omissions were within the course and scope of the employee's employment.[28] Thus, when an employee acts negligently within the course and scope of employment, respondeat superior permits a person injured by that negligent conduct to sue the employee's employer directly to recover all damages to the injured person proximately caused by the employee's negligence.[29]

Vicarious-liability theories such as respondeat superior are not the only means by which an injured party may seek to hold an employer liable for the negligent conduct of an employee. Injured parties may also seek this end by asserting various derivative theories of liability.[30] Derivative theories are like vicarious theories in that under both theories, the injured party may hold an employer liable for the negligent conduct of an employee.[31] Thus, vicarious and derivative theories are both dependent on a finding that the employee's negligence proximately caused damage to the injured party.[32] But, derivative theories are different because they involve the additional requirement that the injured party prove some type of negligence by the employer separate from the employee's negligence, a requirement not present under vicarious theories like respondeat

---

[28] *See Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 565 (Tex. 2016).

[29] *See id.*

[30] *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997).

[31] *See Blaine v. National-Oilwell, L.P.*, No. 14-09-00711-CV, 2010 WL 4951779, at *8–9 (Tex. App.—Houston [14th Dist.] Oct. 30, 2018, no pet.) (mem. op.).

[32] *See id.*

superior.[33]

Under derivative theories like negligent training, negligent supervision, negligent hiring, and negligent retention, an employer may be liable for the negligent acts or omissions of an employee if the employer engaged in certain negligent conduct.[34] Because these theories require negligent conduct by the employer, the employer's liability under these theories is not vicarious.[35] These theories only operate to make the employer liable for an employee's negligence, and even if an employer engages in negligent conduct under these theories, an injured party cannot recover damages against the employer if the employee's negligence did not proximately cause damage to the injured party.[36] Therefore, these derivative theories do not describe an independent basis for recovering against the employer.[37]

Under certain circumstances, an injured party in an accident involving an employee may have a viable negligence claim against the employer under which the injured party may recover based on damages proximately caused by the employer's negligence rather than the employee's negligence, without tying the recovery to any negligent conduct by the employee. For example, an employer might have negligence liability independent of an employee/driver's negligence if the employer knew or should have known that one of the employer's vehicles had

---

[33] *See id.*

[34] *See id.* (negligent hiring, negligent training, and negligent retention theories) (mem. op.); *Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 97–98 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (negligent hiring and negligent supervision theories).

[35] *See Blaine*, 2010 WL 4951779, at *8–9; *Verinakis*, 987 S.W.2d at 97–98.

[36] *See Alford v. Singleton*, No. 14-17-00504-CV, 2018 WL 5621472, at *4–5 (Tex. App.— Houston [14th Dist.] Oct. 30, 2018, no pet.) (mem. op.); *Blaine*, 2010 WL 4951779, at *8–9; *Verinakis*, 987 S.W.2d at 97–98.

[37] *See Alford*, 2018 WL 5621472, at *4–5; *Blaine*, 2010 WL 4951779, at *8–9. For this reason, the better course is not to call these theories "independent theories" or "independent claims."

defective brakes, yet the employer allowed the employee to drive the vehicle in the course and scope of employment without warning the employee about the defective brakes.[38] If the brakes promptly failed and proximately caused an accident injuring a third party, it might be determined that the employee did not engage in negligent conduct but that the employer's negligence proximately caused the accident and the third party's injuries.[39] In such a situation, even if no negligence of the employee proximately caused damage to the injured third party, the third party still may recover against the employer for the damages proximately caused by the employer's independent negligence.[40] Such independent theories are a third category of theories under which an injured party may seek to hold an employer liable.[41]

An employer's admission that an employee was acting in the course and scope of his employment when the employee allegedly engaged in negligent conduct constitutes an admission that under the doctrine of respondeat superior, the employer is vicariously liable for the damages proximately caused by the employee's negligence.[42] Even if a negligent driver is an employee acting outside the course and scope of employment, the employer may nevertheless be liable under one of the derivative theories.[43] But, derivative theories are dependent on the employee's negligence, so under any of the derivative theories, the injured party

---

[38] *See Ferrer v. Okbamicael*, 390 P.3d 836, 845–46 (Colo. 2017).

[39] *See id.*

[40] *See id.*

[41] Sometimes courts or parties may refer to derivative theories and independent theories collectively as "direct theories," in contrast to vicarious theories.

[42] *See Ineos USA, LLC*, 505 S.W.3d at 565.

[43] *See Green v. Ransor, Inc.*, 175 S.W.3d 513, 518–19 (Tex. App.—Fort Worth 2005, no pet.).

must still prove negligence on the part of the employee or contractor.[44]

### 1. The question of whether this court should adopt the Admission Rule

The parties have not cited and research has not revealed a case from the Supreme Court of Texas or this court on whether to apply the Admission Rule.[45] However, several Texas intermediate courts of appeals have adopted the Admission Rule, and no Texas court of appeals has rejected the Admission Rule.[46] Similarly, the highest courts of various other states have adopted the Admission Rule.[47] United States District Courts in Texas applying Texas law have also

---

[44] *See Blaine*, 2010 WL 4951779 at *9.

[45] In *JBS Carriers*, the Supreme Court of Texas disposed of the case without having to address petitioners' argument based on the Admission Rule. *See JBS Carriers, Inc.*, 564 S.W.3d at 841, 843. In *Adams Leasing Company v. Knighton*, this court concluded that as to the third and fourth issues, appellants had failed to preserve error in their motion for new trial, as required by the procedural rules then in effect. *See* 456 S.W.2d 574, 576 (Tex. Civ. App.—Houston [14th Dist.] 1970, no writ). Because of this failure to preserve error, the *Adams Leasing* court stated that "Points of error numbers 3 and 4 are not properly before this Court for consideration and both are overruled." After overruling the issues based on failure to preserve error, the court made a statement relating to the fourth issue, without citing any authority. *See id.* (stating, "Nor may a defendant charged with gross negligence in the entrustment of a vehicle preclude proof thereof by stipulating agency on the part of the person to whom such vehicle is entrusted."). Because the fourth issue was not before this court due to failure to preserve error, this gratuitous statement in *Adams Leasing* was not necessary to the determination of the case and was an obiter dictum. *See Air Routing Intern. Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692–93 (Tex. App.—Houston [14th Dist.] 2004, no pet.). An obiter dictum is not binding and has no precedential value. *See id.*

[46] *See Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643, 654–55 (Tex. App.—Dallas 2002, pet. denied); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178–79 (Tex. App.—Tyler 1979, writ ref'd n.r.e.); *Rodgers v. McFarland*, 402 S.W.2d 208, 210–11 (Tex. Civ. App.—El Paso 1966, writ ref'd n.r.e.); *Luvual v. Henke & Pillot, Division of Kroger Co.*, 366 S.W.2d 831, 838 (Tex. Civ. App.—Houston [1st Dist.] 1963, writ ref'd n.r.e.); *Patterson v. East Tex. Motor Freight Lines*, 349 S.W.2d 634, 636 (Tex. Civ. App.—Beaumont 1961, writ ref'd n.r.e.).

[47] *See Elrod v. G&R Const. Co.*, 628 S.W.2d 17, 19 (Ark. 1982); *Armenta v. Churchill*, 267 P.2d 303, 308–09 (Cal. 1954); *Ferrer v. Okbamicael*, 390 P.3d 836, 841–47 (Colo. 2017); *Wise v. Fiberglass Sys., Inc.*, 718 P.2d 1178, 1181–82 (Idaho 1986); *Houlihan v. McCall*, 78 A.2d 661, 664–65 (Md. 1951); *Nehi Bottling Co. v. Jefferson*, 84 So.2d 684, 686 (Miss. 1956); *McHaffie v. Bunch*, 891 S.W.2d 822, 824–26 (Mo. 1995); *Bogdanski v. Budzik*, 408 P.3d 1156, 1161–64 (Wyo. 2018). Various intermediate appellate courts from other states have done the same. *See*

applied the Admission Rule.[48]

Without making en banc rehearing necessary,[49] a panel of this court could issue an opinion in which this court follows every other Texas court and adopts the Admission Rule. This court could base such a ruling on the following: (1) all Texas intermediate courts of appeals that have addressed the issue have adopted the Admission Rule; (2) the Texas Legislature has adopted the Admission Rule for all actions filed on or after September 1, 2021, without commenting on what rule applies to actions that were filed before that date;[50] (3) if an employer has admitted that under the doctrine of respondeat superior, the employer is subject to vicarious liability for all damages proximately caused by the employee's negligence, derivative theories become duplicative and unnecessary;[51] (4) evidence necessary to prove derivative theories is likely to be unfairly prejudicial to the employee;[52] (5) a danger exists that a jury will assess the employer's liability twice or award duplicative damages to the plaintiff if it hears evidence of both a negligence claim

*Clooney v. Geeting*, 352 So. 2d 1216, 1220 (Fla. Dist. Ct. App. 1977); *Bartja v. Nat'l Union Fire Ins. Co.*, 463 S.E.2d 358, 361 (Ga. Ct. App. 1995); *Gant v. L.U. Transp., Inc.*, 770 N.E.2d 1155, 1160 (Ill. 2002); *Ortiz v. N.M. State Police*, 814 P.2d 117, 120 (N.M. Ct. App. 1991).

[48] *See Fuller v. Werner Enterprises, Inc.*, No. 3:16-CV-2958-BK, 2018 WL 3548886, at *2–3 (N.D. Tex. July 24, 2018); *Sanchez v. Swift Transp. Co. of Arizona, LLC*, No. PE:15-CV-00015-RAJ, 2016 WL 10587127, at *4 (W.D. Tex. Oct. 4, 2016); *Williams v. McCollister*, 671 F.Supp.2d 884, 888–89 (S.D. Tex. 2009).

[49] *See* Tex. R. App. P. 41.2(c).

[50] *See* Act of May 28, 2021, 87th Leg., R.S., ch. 785, § 4, 2021 Tex. Sess. Law Serv. (codified at Tex. Civ. Prac. & Rem. Code § 72.054, eff. September 1, 2021).

[51] *See* Richard A. Mincer, The Viability of Direct Negligence Claims Against Motor Carriers in the Face of an Admission of Respondeat Superior, 10 Wyo. L. Rev. 229, 232–33 & n.9 (2010).

[52] *See Houlihan*, 78 A.2d at 664–65 (stating that "where agency is admitted, [evidence of a driver's record] can serve no purpose except to inflame the jury."); *Clooney*, 352 So.2d at 1220 (asserting that "[s]ince the [direct negligence] counts impose no additional liability but merely allege a concurrent theory of recovery, the desirability of allowing these theories is outweighed by the prejudice to the defendants").

against an employee and derivative theory against the employer;[53] and (6) neither section 33.003 of the Civil Practice and Remedies Code nor the proportionate responsibility regime of Civil Practice and Remedies Code chapter 33 precludes this court from adopting or applying the Admission Rule.[54]

## 2. *The question of whether there is an exemplary-damage exception to the Admission Rule*

Several courts applying Texas law and courts from other jurisdictions have concluded that the Admission Rule does not apply in cases in which the injured party pursues a negligence claim against the driver, asserts respondeat superior and derivative theories against the employer, and seeks exemplary damages against the employer.[55] The Blake Parties argue that, even if this court adopts the Admission Rule, we should recognize the exemplary-damage exception and conclude that this case falls within that exception because the Blake Parties sought exemplary damages against Werner based on its alleged gross negligence. The Werner Parties assert that this court should follow courts from other jurisdictions that have

---

[53] *See* Mincer, *supra*, 10 Wyo. L. Rev. at 238; *Ferrer*, 390 P.3d at 845; *McHaffie*, 891 S.W.2d at 827; *see also Thompson v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 854 N.E.2d 744, 747 (Ill. App. 2006) (stating that "[t]o allow both causes of action to stand would allow the jury to assess or apportion the principal's liability twice.").

[54] *See* Tex. Civ. Prac. & Rem. Code Ann §33.003 (West, Westlaw through 2019 R.S.); *Williams*, 671 F.Supp.2d at 889–92 (applying Texas law); *Conkle v. Chery*, No. 03-08-00379-CV, 2009 WL 483226 at *4–5 (Tex. App.—Austin 2009, no pet.) (mem. op.); *Rosell*, 89 S.W.3d at 656–57; *Loom Craft Carpet Mills, Inc. v. Gorrell*, 823 S.W.2d 431, 432 (Tex. App.—Texarkana 1992, no writ); *Diaz v. Carcamo*, 253 P.3d 535, 544 (Cal. 2011); *Ferrer*, 390 P.3d at 847; *Gant*, 770 N.E.2d at 1159; *McHaffie*, 891 S.W.2d at 826; William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious, Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 Baylor L. Rev. 617, 634–36, 642–50 (2003), *but see Bedford v. Moore*, 166 S.W.3d 454, 459–63 (Tex. App.—Fort Worth 2005, no pet.).

[55] *See Monroe v. Freight All Kinds, Inc.*, No. 18-CV-03238-SRB, 2020 WL 6589000, at *2–3 (W.D. Mo. 2020) (applying Missouri law); *Wilson v. Image Floring*, 400 S.W.3d 386, 391–94 (Mo. App. 2013); *Williams*, 671 F.Supp.2d at 888–89 (applying Texas law); *Rosell*, 89 S.W.3d at 654–55; *Estate of Arrington*, 578 S.W.2d at 178–79.

adopted the Admission Rule but concluded that no exemplary-damage exception to that rule exists.[56]

Without triggering either of the en banc criteria,[57] a panel of this court could confect an opinion in which this court concludes that an exemplary-damage exception to the Admission Rule exists if the injured party seeks exemplary damages against the employer based on the employer's alleged gross negligence, malice, or fraud but that the exception does not apply if the trial evidence is legally insufficient to support a finding that clear and convincing evidence proves the harm with respect to which the injured party seeks recovery of exemplary damages resulted from the employer's gross negligence, malice, or fraud.[58] This court could base such a conclusion on the following: (1) if an injured party asserts respondeat superior and derivative theories against the employer, and seeks exemplary damages against the employer, to recover exemplary damages against the employer, the injured party must prove by clear and convincing evidence that the harm with respect to which the injured party seeks recovery of exemplary damages resulted from the employer's gross negligence, malice, or fraud;[59] (2) in a case tried to a jury, exemplary damages may be awarded only if the jury unanimously

[56] *See Greene v. Grams*, 384 F.Supp.3d 100, 104 (D. D.C. 2019) (applying District of Columbia law); *Ferrer*, 390 P.3d at 847–48.

[57] *See* Tex. R. App. P. 41.2(c).

[58] *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a); *Monroe*, 2020 WL 6589000, at *2–3 (recognizing exemplary-damage exception to Admission Rule under Missouri law); *Cahalan v. May Trucking Co.*, No. 11-CV-214-F, 2012 WL 12915496, at *4–6 (D. Wyo. 2012) (holding under Wyoming law that an exemplary-damage exception to Admission Rule did not apply because there was no evidence that would support an award of exemplary damages against the employer); *Williams*, 671 F.Supp.2d at 888–89 (recognizing exemplary-damage exception to Admission Rule under Texas law); *Rosell*, 89 S.W.3d at 654–55 (same as *Williams*); *Estate of Arrington*, 578 S.W.2d at 178–79 (same as *Williams*); Mincer, *supra*, 10 Wyo. L. Rev. at 260–63.

[59] *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a), (b) (West, Westlaw through 2019 R.S.); *Medina v. Zuniga*, 593 S.W.3d 238, 247 (Tex. 2019).

finds that the injured party satisfied this burden of proof;[60] (3) in many cases, proving the driver's conduct, for which the employer has admitted vicarious liability, will not by itself suffice to prove by clear and convincing evidence that the injured party's harm resulted from the employer's gross negligence, malice, or fraud;[61] (4) if an injured party relies on the alleged conduct of the employer on which the injured party bases derivative theories as a basis for proving that the injured party's harm resulted from the employer's gross negligence, malice, or fraud, the derivative theories would not be superfluous, undermining a main basis for the Admission Rule;[62] (5) if the injured party proves by clear and convincing evidence that the harm with respect to which the injured party seeks recovery of exemplary damages resulted from an employer's gross negligence, malice, or fraud, the employer should be liable for exemplary damages, even if the employer admits to respondeat superior; (6) even if derivative theories are not duplicative and unnecessary because of the injured party's request for exemplary damages, other concerns still exist—evidence necessary to prove derivative theories still is likely to be unfairly prejudicial to the employee, and a danger still exists that the jury will assess the employer's liability twice or award duplicative damages to the plaintiff if it hears evidence of both a negligence claim against an employee and a derivative theory against the employer;[63] (7) if a court recognizes an exemplary-damage exception to the Admission Rule, a danger exists that the exception may

---

[60] *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(d) (West, Westlaw through 2019 R.S.).

[61] *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a), (b); *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997).

[62] *See* Richard A. Mincer, The Viability of Direct Negligence Claims Against Motor Carriers in the Face of an Admission of Respondeat Superior, 10 Wyo. L. Rev. 229, 232–33 & n.9 (2010).

[63] *See* Mincer, *supra*, 10 Wyo. L. Rev. at 238; *Houlihan*, 78 A.2d at 664–65; *Clooney*, 352 So.2d at 1220.

swallow the rule;[64] and (8) if an injured party only needs to allege gross negligence, malice, or fraud and seek exemplary damages to avoid application of the Admission Rule, many injured parties may avoid the Admission Rule by so pleading.

### 3. The question of whether the trial court reversibly erred in denying Werner's motion for directed verdict based on the Admission Rule

The Blake Parties asserted negligence claims against Ali. They asserted that at the time of Ali's negligence, Werner employed Ali, and Ali was acting in the course and scope of his employment with Werner, so that Werner is vicariously liable for Ali's negligence under the doctrine of respondeat superior. The Blake Parties also asserted various Question 1 & 2 Theories against Werner. The Blake Parties alleged that the Werner Parties' conduct constituted gross negligence that was a proximate cause of the occurrence in question resulting in damages to the Blake Parties. The Blake Parties sought actual damages against Ali and Werner, as well as exemplary damages against Werner.

The claims against Ali, the Question 1 & 2 Theories, and the Blake Parties' requests for exemplary damages were tried in an unbifurcated jury trial. At trial Werner stipulated that Ali was acting in the course and scope of his employment with Werner when Ali engaged in the allegedly negligent conduct, thus admitting that under the doctrine of respondeat superior, Werner is vicariously liable for any negligent acts or omissions by Ali.[65]

At the close of the evidence at trial, Werner moved for a directed verdict as to all Question 1 & 2 Theories against Werner on the grounds that Werner

---

[64] *See* Mincer, *supra*, 10 Wyo. L. Rev. at 263.

[65] *See Ineos USA, LLC*, 505 S.W.3d at 565.

admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence at trial that Werner was grossly negligent. The trial court denied Werner's motion. Under the Admission Rule, Werner's admission that Ali was acting in the course and scope of his employment with Werner when Ali engaged in the allegedly negligent conduct bars the Blake Parties from pursuing derivative theories against Werner unless the exemplary-damages exception applies.[66] Without causing the case to fall within either en banc criteria,[67] a panel of this court could conclude that under the exemplary-damage exception to the Admission Rule, the exception does not apply if the trial evidence is legally insufficient to support a finding that clear and convincing evidence proves the harm with respect to which the injured party seeks recovery of exemplary damages resulted from the employer's gross negligence, malice, or fraud.[68]

The Blake Parties did not seek exemplary damages based on any alleged malice or fraud by Werner. Instead, they sought exemplary damages based on Werner's alleged gross negligence. Over Werner's objection that there was no evidence to support the submission, the trial court asked the jury in Question 13 whether the jury unanimously found by clear and convincing evidence that the harm to the Blakes resulted from Werner's gross negligence. Because the jury did not unanimously answer any of the liability questions, the jury followed the trial court's instruction and did not answer this question.

On appeal, the Werner Parties argue that the Blake Parties' derivative

---

[66] *See Cahalan*, 2012 WL 12915496, at *4–6; *Williams*, 671 F.Supp.2d at 888–89; *Rosell*, 89 S.W.3d at 654–55; *Estate of Arrington*, 578 S.W.2d at 178–79; *Rodgers*, 402 S.W.2d at 210–11; *Luvual*, 366 S.W.2d at 838; *Patterson*, 349 S.W.2d at 636.

[67] *See* Tex. R. App. P. 41.2(c).

[68] *See Cahalan*, 2012 WL 12915496, at *4–6 (holding that an exemplary-damage exception to Admission Rule did not apply because there was no evidence that would support an award of exemplary damages against the employer).

theories have no validity based on the Admission Rule. The Blake Parties assert that even if the court adopts the Admission Rule, the exemplary-damage exception applies because they sought exemplary damages based on Werner's alleged gross negligence. The Werner Parties argue that no evidence supported a recovery by the Blake Parties of exemplary damages. Liberally construing the Werner Parties' appellate briefing, the Werner Parties have sufficiently briefed a challenge to the trial court's denial of their motion for directed verdict as to all Question 1 & 2 Theories against Werner on the grounds that Werner admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence at trial that Werner was grossly negligent.[69]

Without making en banc rehearing necessary under either of the en banc criteria,[70] a panel of this court could produce an opinion in which the court concludes that the exemplary-damage exception does not apply,[71] and that the trial court reversibly erred in denying Werner's motion for directed verdict as to all derivative theories against Werner on the grounds that Werner admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence at trial that Werner was grossly negligent.[72] This court could base such a

---

[69] *See Perry v. Cohen*, 272 S.W.3d 585, 588 (Tex. 2008) (holding that court of appeals erred by concluding appellant failed to assign error as to special-exceptions order because, under a liberal construction of appellant's brief, appellant challenged this order given that appellant presented argument challenging the basis of this order, though appellant did not expressly challenge the order).

[70] *See* Tex. R. App. P. 41.2(c).

[71] *See Cahalan*, 2012 WL 12915496, at *4–6.

[72] *See Medina*, 593 S.W.3d at 247–50; *Nat'l Security Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 846 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that trial court erred in denying appellant's motion for directed verdict and submitting a claim to the jury despite appellant's argument that the claim was precluded as a matter of law); *Ruelas v. Western Truck & Trailer Maintenance, Inc.*, No. PE:18-CV-2-DC, 2019 WL 4060891, at *7–9 (W.D. Tex. 2019).

conclusion on the following: (1) Werner admitted at trial that Ali was acting in the course and scope of his employment at Werner; and (2) the trial evidence was legally insufficient to prove by clear and convincing evidence that the harm with respect to which the Blake Parties seek recovery of exemplary damages resulted from Werner's gross negligence.[73] Though this conclusion would result in a reversal and a rendition of judgment in part that the Blake Parties take nothing as to all of their derivative theories of negligence, to the extent that one or more of the Question 1 & 2 Theories was an independent theory, the trial court would not have erred in denying this motion because the Admission Rule does not apply to independent theories.[74]

## G. The issue of whether Question 1 contains reversible charge error

In Question 1, the trial court asked the jury, "Was the negligence, if any, of Werner acting through its employees other than Shiraz Ali a proximate cause of the injuries in question?" The jury answered "yes." In Question 1, the trial court instructed the jury as follows:

- "In answering this question, do not consider Werner's negligence, if any, in training or supervising Shiraz Ali."

- "'Negligence,' when used with respect to the conduct of Werner, means failure to use ordinary care, that is, failing to do that which a trucking company of ordinary prudence would have done under the same or similar circumstances or doing that which a trucking company of ordinary prudence would not have done under the same or similar circumstances."

- "'Ordinary care,' when used with respect to the conduct of Werner, means

---

[73] *See Medina*, 593 S.W.3d at 247–50; *Reeder v. Wood Cnty. Energy, LLC*, 395 S.W.3d 789, 797 (Tex. 2012); *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 137–41 (Tex. 2012); *Ruelas*, 2019 WL 4060891, at *7–9; *Cahalan*, 2012 WL 12915496, at *4–6. The Blake Parties did not seek exemplary damages based on any alleged fraud or malice by Werner.

[74] *See Ferrer*, 390 P.3d at 845–46; Mincer, *supra*, 10 Wyo. L. Rev. at 260.

that degree of care that would be used by a trucking company of ordinary prudence under the same or similar circumstances."

- "'Proximate cause,' when used with respect to the conduct of Werner, means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a trucking company using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury."

During the charge conference the trial court overruled objections by the Werner Parties that (1) Question 1 broadly submits Werner's negligence without specifying which acts or omissions allegedly constitute negligence; (2) Question 1 is an improper submission under *Crown Life Insurance Company v. Casteel*[75] because the question combines valid and invalid theories; (3) the Blake Parties have asserted 22 possible actions by Werner that they contend may constitute negligence, not all of which would constitute negligence; (4) there is no way to tell from an affirmative answer by the jury to Question 1 which acts or omissions by Werner the jury found to constitute negligence, preventing the court of appeals from determining the acts or omissions on which the jury based an affirmative answer to Question 1. The trial court overruled Werner's objections. Under their second issue, the Werner Parties assert that the trial court reversibly erred in overruling these objections.

Without making en banc rehearing necessary under either of the en banc criteria,[76] a panel of this court could generate an opinion in which this court concludes that the trial court reversibly erred in overruling these objections to Question 1, and that this charge error requires a new trial because: (1) a

---

[75] 22 S.W.3d 378, 387–88 (Tex. 2000).

[76] *See* Tex. R. App. P. 41.2(c).

complaining party may preserve this type of charge complaint by obtaining an adverse ruling on an objection that the form of the question would not allow for a determination of the conduct on which the jury based an affirmative answer to the question, without any requirement that the party specifically object to an invalid theory;[77] (2) in today's case, the Werner Parties objected to the broad nature of Question 1, asserted that Question 1 combined valid and invalid theories, and complained that there is no way to tell from an affirmative answer to Question 1 the acts or omissions on which the jury based its answer, in a case in which the Blake Parties asserted 22 possible actions that they contend may constitute negligence, not all of which would constitute negligence; (3) by obtaining an adverse ruling on these timely objections, the Werner Parties preserved error;[78] (4) to preserve error the Werner Parties did not have to specify an invalid theory that was commingled with a valid theory, request a limiting instruction, or identify specific conduct that the jury should or should not consider in deciding whether the Werner Parties were negligent;[79] (5) when a negligence liability question allows a finding of liability based on evidence that cannot support recovery, courts must apply the *Casteel* presumption-of-harm rule and presume that the trial court's error in overruling a defendant's objection to the charge on this basis is harmful;[80] (6) to trigger this presumption of harm, it is not necessary that the question specifically

---

[77] *See Texas Commission on Human Rights v. Morrison*, 381 S.W.3d 533, 535–37 (Tex. 2012) (per curiam).

[78] *See Morrison*, 381 S.W.3d at 535–37 (Tex. 2012) (concluding that appellant preserved error on a complaint that broad-form question allowed a finding of liability based on an invalid denial-of-promotion theory by objecting that the question combined different "adverse personnel actions" together, that the case was really about retaliation and termination, and that it would be impossible to determine the adverse acts or omissions on which the jury based an affirmative answer to the question).

[79] *See Benge v. Williams*, 548 S.W.3d 466, 476–77 (Tex. 2018); *Morrison*, 381 S.W.3d at 535–37.

[80] *See Benge*, 548 S.W.3d at 475–76; *Morrison*, 381 S.W.3d at 535–38.

submit an invalid liability theory;[81] (7) courts may not simply require employers to exercise ordinary care in all circumstances; instead, Texas law requires courts to be more specific;[82] (8) other than carving out the negligent-supervision and negligent-training theories that the trial court submitted in Question 2, the trial court submitted a general negligence duty in Question 1, thus indicating that Werner, the employer, must exercise ordinary care in all circumstances; (9) even presuming that the jury followed the trial court's instruction and did not base its answer to Question 1 on either a negligent-supervision or a negligent-training theory, other than that exclusion, there is no way of knowing the theory or theories of negligence on which the jury based its answer to Question 1; (10) the jury may have based its affirmative answer to Question 1 on evidence of alleged derivative theories of liability that the Admission Rule bars;[83] (11) this court must presume that the trial court's error in overruling Werner's objections and not separating out the theories on which the jury properly could find liability under Question 1 was harmful error;[84] and (12) nothing in the record overcomes this presumption, and this error probably prevented Werner from properly presenting the case to this court.[85]

## VI.    Conclusion

After nearly two years of panel consideration of this case, five justices on this court have decided to order sua sponte en banc consideration, without the issuance of the panel opinions that were the fruits of the panel's deliberation. The

---

[81] *See Benge*, 548 S.W.3d at 475–76; *Morrison*, 381 S.W.3d at 535–38.

[82] *See Pagayon*, 536 S.W.3d at 506.

[83] *See Medina*, 593 S.W.3d at 247–50; *Ruelas*, 2019 WL 4060891, at *7–9; *Cahalan*, 2012 WL 12915496, at *4–6.

[84] *See Benge*, 548 S.W.3d at 475–76; *Morrison*, 381 S.W.3d at 537–38.

[85] *See* Tex. R. App. P. 44.1; *Benge*, 548 S.W.3d at 476–77; *Morrison*, 381 S.W.3d at 538.

31

en banc majority has given no good reason for wasting the last 20 months and wasting the panel's time and effort. The en banc majority gives no good reason for its unprecedented move because there is none. Nothing good can come from this decision by the en banc majority.

Is this really what we've come to? Are we just going to skip the panel decision and go directly to en banc every time a justice thinks he or she might be able to cobble together enough votes to overrule a panel sometime in the future? Why is the en banc majority so afraid of issuing a panel decision and letting the parties know how at least some of the justices view this case? Why don't we just skip panel decisions entirely and go directly to en banc in every case? We might as well since this case is no more appropriate for en banc consideration than hundreds of cases that this court hears every year.

/s/ Randy Wilson
Justice

En banc court consists of Chief Justice Christopher and Justices Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, Poissant, and Wilson. Chief Justice Christopher and Justices Wise, Jewell, and Wilson would not order en banc consideration of this case in the first instance and would allow the panel to decide the case. Justice Hassan authored a Concurrence to Order. Chief Justice Christopher authored a Dissent to Order, in which Justices Wise, Jewell, and Wilson joined. Justice Wilson authored a Dissent to Order, in which Justice Wise joined in full, and in which Chief Justice Christopher and Justice Jewell joined as to Parts I, II, III, and IV only.

Publish — Tex. R. App. P. 41.1(a); 41.2(a).

32